The PRUDENTIAL INSURANCE
COMPANY OF AMERICA,
Plaintiff-Appellant,

v.

GIBRALTAR FINANCIAL CORPORATION OF CALIFORNIA, and Gibraltar Savings & Loan Association, Defendants-Appellees.

No. 81–5874.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 1, 1982.

Decided Dec. 16, 1982.

As Amended Dec. 22, 1982.
Rehearing Denied Jan. 31, 1983.

**1152**

John S. Kingdon, Howrey & Simon, Washington, D.C., for plaintiff-appellant.

Marvin Jubas, Alex Chartove, Spensley Horn Jubas & Lubitz, Los Angeles, Cal., for defendants-appellees.

Before GOODWIN, HUG and BOOCHEVER, Circuit Judges.

GOODWIN, Circuit Judge.

This dispute is about the likeness of a rock. Prudential Insurance Company of America alleges that Gibraltar Financial Corporation of California and Gibraltar Savings & Loan Association (collectively, Gibraltar) have misappropriated its corporate symbol, a picture of the Rock of Gibraltar. Prudential sued for injunctive relief alleging (1) infringement of a registered service mark under the Lanham Act, 15 U.S.C. §§ 1051–1127, (2) dilution of a registered service mark in violation of Cal. Bus. and Prof.Code §§ 14320–14330, and (3) unfair competition. Gibraltar counterclaimed, alleging that Prudential has abandoned four older versions of Prudential's logo. The district court held for Gibraltar on all issues and ordered cancellation of four of Prudential's trademark registrations. This appeal followed.

In 1896, Prudential adopted a likeness of the Rock of Gibraltar as its service mark. Prudential registered different versions of its mark in 1948, 1955, 1965, 1973 and 1979. The first four registrations had achieved incontestability status at the time of this action.

Gibraltar Savings and Loan Association was formed in 1952 and first used a rock logo in 1954. Gibraltar Financial Corporation was formed in 1959 and from that date until 1968, used a globe as its corporate mark. Gibraltar Savings and Loan expanded from 1 branch in 1960 to 77 branches in 1980.

In 1979, Prudential first complained to Gibraltar about Gibraltar's use of a rock logo. Prudential sued after Gibraltar had used the rock logo for twenty-eight years. Prudential is barred by laches.

Prudential contends that laches may preclude damages, but cannot bar injunctive relief. Prudential relies on *Menendez v. Holt,* 128 U.S. 514, 523–524, 9 S.Ct. 143, 145, 32 L.Ed. 526 (1888); *McLean v. Fleming,* 96 U.S. 245, 24 L.Ed. 828 (1877); and *Stork Restaurant, Inc. v. Sahati,* 166 F.2d 348, 363 (9th Cir.1948). These cases do not support the proposition. The Supreme Court explicitly made laches available as an equitable defense barring injunctive relief in *United Drug Co. v. Rectanus Co.,* 248 U.S. 90, 102–103, 39 S.Ct. 48, 52–53, 63 L.Ed. 141 (1918); and *French Republic v. Saratoga Vichy Spring Co.,* 191 U.S. 427, 436–437, 24 S.Ct. 145, 146–147, 48 L.Ed. 247 (1903). These cases limited the *Menendez* and *McLean* rationale to situations involving fraudulent imitation or conscious infringement. *United Drug,* 248 U.S. at 102, 39 S.Ct. at 52. The *Stork* court found no laches based on the facts, *Stork Restaurant v. Sahati,* 166 F.2d 348, 362–363 (9th Cir. 1948), and stated in dicta that laches could not bar injunctive relief. In light of *United Drug* and *Saratoga Vichy, Stork Restaurant* should be read for the limited proposition that the defense of laches was not made out in that case. *See National Van Lines v. Dean,* 237 F.2d 688, 693–694 (9th Cir.1956) (defense of laches not made on facts).[1]

---

1. There is a wealth of authority in other circuits that laches can bar injunctive relief. *See, e.g., Skippy, Inc. v. CPC International, Inc.,* 674 F.2d 209, 212 (4th Cir.1982) (30-year delay constitutes laches); *Saratoga Vichy Spring Co. v. Lehman,* 625 F.2d 1037, 1040–1042 (2nd Cir. 1980) (proposition that laches cannot bar injunctive relief has long been rejected); *Safe-*

■ Four of Prudential's rock marks have incontestable status under 15 U.S.C. § 1065. Prudential alleges that only the defenses enumerated in 15 U.S.C. § 1115(b) can apply against incontestable marks; laches is not one of these. Gibraltar responds that 15 U.S.C. § 1116 calls on the courts "to grant injunctions, according to the principles of equity...." in protecting trademark registrants' rights and, therefore, laches can apply.[2] This court considers incontestability to be a defensive provision only. It helps protect the registrant's mark from cancellation but is of no offensive use. Incontestability does not preclude a defense of laches. *Tillamook County Creamery Ass'n v. Tillamook Cheese and Dairy Ass'n,* 345 F.2d 158, 163 (9th Cir.), *cert. denied,* 382 U.S. 903, 86 S.Ct. 239, 15 L.Ed.2d 157 (1965).

Prudential invites this court to overrule *Tillamook.* We decline for two reasons: First, precedent should be followed unless good reason counsels change. No such reason exists. The effect of 15 U.S.C. § 1115(b) is unclear; and both positions regarding the offensive/defensive distinction are reasonable readings of the statute.[3] Second, the availability of a laches defense narrows the protection afforded trademarks. For policy reasons, this circuit has expressed a preference to read the Lanham Act narrowly. *International Order of Job's Daughters v. Lindeburg & Co.,* 633 F.2d 912, 918 (9th Cir.), *cert. denied,* 452 U.S. 941, 101 S.Ct. 3086, 69 L.Ed.2d 956 (1981). The Act protects against fraud and consumer confusion. *See James Burrough Ltd. v. Sign of Beefeater, Inc.,* 540 F.2d 266, 276 (7th Cir.1976) (trademark laws exist not to protect trademarks, but to protect consuming public from confusion, concomitantly protecting trademark owner's right to non-confused public). To read the Act more broadly invites anticompetitive and irrational market behavior. *Smith v. Chanel, Inc.,* 402 F.2d 562, 566 (9th Cir.1968). *See* Brown, *Advertising and the Public Interest,* 57 Yale L.J. 1165, 1185–1206 (1948) (distinguishes "informative" from "persuasive" functions of trademarks and argues only former should be legally protected).

Prudential makes three factual allegations in an attempt to avoid the application of laches: (1) Gibraltar did not use the Rock logo continuously; (2) Gibraltar changed its rock to look more like Prudential's rock over the years; and (3) Gibraltar grew prodigiously from 1 office in the early 1960's to 77 offices in 1980.

■ The first allegation is unsupported. Gibraltar Financial Corporation and Gibraltar Financial, Insurance Division, used marks other than variations of the rock

way *Stores, Inc. v. Safeway Quality Foods, Inc.,* 433 F.2d 99, 102–103 (7th Cir.1970) (16-year delay constitutes laches); *Chandon Champagne Corp. v. San Marino Wine Corp.,* 335 F.2d 531, 535 (2nd Cir.1964) (18-year delay constitutes laches); *Anheuser-Busch v. Du Bois Brewing Co.,* 175 F.2d 370, 376–377 (3rd Cir.), *cert. denied,* 339 U.S. 934, 70 S.Ct. 664, 94 L.Ed. 1353 (1950) (30-year delay constitutes laches); *Standard Oil Co. v. Standard Oil Co.,* 252 F.2d 65, 76–77 (10th Cir.1958) (defense available but denied on facts).

2. Commentators are uncertain about the effect of incontestability. *See Developments in the Law—Trademarks and Unfair Competition,* 68 Harv.L.Rev. 814, 829–830 (1955). Some circuits consider incontestability to be a defensive provision only; that is, useful only when cancellation proceedings are initiated against a mark. *Tillamook County Creamery Ass'n v. Tillamook Cheese and Dairy Ass'n,* 345 F.2d 158 (9th Cir.), *cert. denied,* 382 U.S. 903, 86 S.Ct. 239, 15 L.Ed.2d 157 (1965). Other circuits

make no offensive-defensive distinction, allowing incontestability to be used against an alleged infringer, *Union Carbide Corp. v. Ever-Ready, Inc.,* 531 F.2d 366, 371–377 (7th Cir.), *cert. denied,* 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94 (1976).

3. Commentators are either uncertain, *see Developments in the Law—Trademarks and Unfair Competition,* 68 Harv.L.Rev. 814, 830 (1955), or split on the issue. *Compare,* Callmann, *Unfair Competition and Trade-Marks,* 2d Ed., Vol. 4, § 93.3(c)(1), p. 2075–2076 (incontestability is defensive only) *with* J. Thomas McCarthy, *Important Trends in Trademark and Unfair Competition Law During the Decade of the 1970's,* 71 Trade-Mark Rep. 83, 101–106 (1981) (praising *Union Carbide* decision), and Note *Incontestable Trademark Rights and Equitable Defenses in Infringement Litigation,* 66 Minn.L.Rev. 1067 (1982) (argues incontestability should preclude equitable defenses).

between 1959 and 1968. However, it is uncontroverted that Gibraltar Savings and Loan used the rock logo from 1954 until today. The rock logo also represented all of the Gibraltar family of organizations from 1954 to 1959, and from 1968 until today.

■ Prudential alleges Gibraltar more closely imitated its rock over the years. Prudential relies on inferences drawn from comparison of the respective changes made in the design of the rock logo by the companies over the years. Inspection of the marks provided in Prudential's brief fails to show increasing similarity between Prudential and Gibraltar logos. The marks of the two companies looked as similar twenty-eight years ago as they look today, probably because they represent the same rock, albeit with decreasing fidelity to the real thing.

■ Prudential's third allegation is that because Gibraltar has progressively encroached upon Prudential's mark over time, laches cannot bar injunctive relief. The argument appears to be two-pronged: (1) Gibraltar's business has expanded over time; and (2) Gibraltar's use of the symbol has expanded and progressively encroached on Prudential's symbol.

Prudential bases its theory of symbolic encroachment on two allegations: (1) that Gibraltar modified its mark over the years to approximate Prudential's mark more closely; and (2) that Gibraltar recently entered the television advertising arena. The first allegation has already been discussed. The record shows that Gibraltar has engaged in TV advertising for nearly twenty years. The volume of Gibraltar's television advertising has increased, and the use of the rock logo has become more frequent. However, these facts are not adequate to support the theory of gradual encroachment.

Prudential also alleges that Gibraltar's expansion in type and amount of business constitutes progressive encroachment and thus laches is no bar to relief. Prudential relies on *California Packing Corp. v. Sun-Maid Raisin Growers,* 81 F.2d 674 (9th Cir.), *cert. denied,* 298 U.S. 668, 56 S.Ct. 833, 80 L.Ed. 1391 (1936). *Sun-Maid* is inapposite because it is a contract case in which plaintiff and defendant agreed to defendant's use of the Sun-Maid label on raisins only. When defendant expanded its product line to other fruits, plaintiff immediately protested. The court held that use of the Sun-Maid label as allowed by contract did not raise a laches defense to use of "Sun-Maid" on other fruits in violation of the contract. *Id.* at 676, 679–680.

■ Prudential also relies on a number of other progressive encroachment cases, principally *Chandon Champagne Corp. v. San Marino Wine Corp.,* 335 F.2d 531, 535 (2nd Cir.1964); *Miss Universe, Inc. v. Patricelli,* 271 F.Supp. 104, 110 (D.Conn.1967), *affirmed,* 386 F.2d 997 (2nd Cir.1967); *Standard Oil Co. v. Standard Oil Co.,* 252 F.2d 65 (10th Cir.1958); *Independent Nail & Packing Co. v. Stronghold Screw Products, Inc.,* 205 F.2d 921, 927 (7th Cir.), *cert. denied,* 346 U.S. 886, 74 S.Ct. 138, 98 L.Ed. 391 (1953). These cases all rely on the principle that if the junior user of a mark moves into direct competition with the senior user, selling the same "product" through the same channels and causing actual market confusion, laches is no defense. Gibraltar has not moved into direct competition with Prudential as contemplated in these cases. Gibraltar and Prudential do not offer the same services to any substantial extent and there is no evidence that actual confusion of their services has occurred.

■ As for expansion in amount of business, it is true that Gibraltar has grown tremendously, but growth alone does not infringement make. *See, e.g., Polaroid Corp. v. Polarad Electronics Corp.,* 287 F.2d 492, 498 (2d Cir.), *cert. denied,* 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961) (laches barred plaintiff because of failure to act while defendant was small). In *Dwinell-Wright Co. v. White House Milk Co.,* 132 F.2d 822 (2d Cir.1943) the court held that laches barred injunctive relief because "[f]rom the first moment when it learned of ... [defendant's] use of the mark ... —sixteen years—the plaintiff did nothing to stop that use; it merely stood aside and watched

the business grow at great cost to colossal proportions." *Id.* at 825. We find no error in the district court's factual basis for finding laches.

█ Prudential's allegations of dilution and unfair competition under California law are also barred by laches. In addition, the unfair competition claim fails for lack of evidence of confusion by purchasers as to source as required by California law. *Walt Disney Prod. v. Air Pirates,* 581 F.2d 751, 760 (9th Cir.), *cert. denied,* 439 U.S. 1132, 99 S.Ct. 1054, 59 L.Ed.2d 94 (1979).

█ Prudential argues the lower court erred in finding that Prudential and Gibraltar do not compete, contending that: (1) Gibraltar also sells insurance; (2) Gibraltar and Prudential are both financial institutions which take surplus funds from the public and invest the funds for a profit; and, (3) even if the two companies do not compete extensively now, deregulation will make them competitors.

The district court found that Gibraltar sells a small amount of insurance, mostly in conjunction with home mortgage and building loans. The record shows that insurance sales comprise less than 0.3 percent of Gibraltar's business and that this insurance is sold primarily to depositors and borrowers. Savings and loan associations routinely insure mortgage payment. Such insurance, not sold to the public at large, does not make Gibraltar a competitor of Prudential. A different case would be presented if Gibraltar attempted to enter the general insurance market on a broad scale.

Prudential next argues that both companies are in the business of acquiring surplus funds for investment at a profit. Though analytically attractive, the claim is flawed for two reasons. First, it is too broad. Almost every purchase can be said to be made with "surplus funds," and every corporation which thus acquires funds is free to invest those funds for long or short-term profit. These two corporations are competitors only in the sense that at any given time, the investment pie is divided into finite pieces.

Second, the argument ignores the function of a trademark: identification of a product or service to the consumer. Though term insurance and a savings account may have some similarity in an economic sense, most consumers would perceive insurance as a hedge against risk and not as capital accumulation. A savings account is the reverse. Use of similar symbols to identify different products presents less of a problem of confusion than if both parties supplied the same service.

Prudential also contends that given the rapid change in financial institutions, the two companies will soon compete in a wide variety of services. This argument is speculative. No one knows the future contours of banking, savings and loan, and insurance regulation. Even if the regulatory framework were amended to allow unfettered expansion, whether such growth and service competition will occur is a matter entrusted to private decision-makers as business needs and opportunities dictate. The mere possibility of future competition is too tenuous a basis upon which to reverse the district court. On the record developed in the trial court in this case, the growth of the companies and the changes in their services do not create a basis for relief. Nothing in this opinion will preclude new litigation if new facts develop. A remedy will be available when the necessary facts arise.

█ The district court excluded from evidence Prudential's survey showing that 14 percent to 31 percent of the public identify Gibraltar's logo with Prudential's logo. Prudential alleges the court improperly excluded the survey as unreliable and as hearsay evidence. The district court stated the evidence "did not meet the reliability requirements necessary to overcome its hearsay character." This composite conclusion was incorrect. Reliability and hearsay are linked conceptually for certain purposes, but not in the way the trial court linked these concepts in this case. Neither premise is a basis for rejecting survey evidence.

 Technical unreliability goes to the weight accorded a survey, not its admissibility. *C.A. May Marine Supply Co. v. Brunswick Corp.*, 649 F.2d 1049, 1055 and n.10 (5th Cir.1981). Surveys are admissible, if relevant, either as nonhearsay or through a hearsay exception. *Zippo Manufacturing Co. v. Rogers Imports, Inc.*, 216 F.Supp. 670, 682–684 (S.D.N.Y.1963). Surveys conducted according to accepted principles are routinely admitted. *See, e.g., Anti-Monopoly, Inc. v. General Mills Fun Group, Inc.*, 684 F.2d 1316 (9th Cir.1982). A few cases do support the position taken by the district court. *See, e.g., American Foot Wear Corp. v. General Footwear Co.*, 609 F.2d 655, n.4 (2d Cir.), *cert. denied*, 445 U.S. 951, 100 S.Ct. 1601, 63 L.Ed.2d 787 (1980) (trial court properly excluded survey which contained self-serving questions and which failed to duplicate actual marketing conditions). The majority view, however, to admit the survey and discount its probative value, seems the better course.

 Nonetheless, exclusion failed to prejudice Prudential because the survey showed only that the Prudential rock and the Gibraltar rock are linked in the public eye. It failed to show any confusion between Gibraltar's services and Prudential's services and that failure, together with the fact that twenty-eight years of coexistence had produced no examples of actual confusion, make the fear of confusion in the future problematic.

 Gibraltar presented evidence from Prudential's Graphic Standards Manual that Prudential intended to abandon its marks registered in 1948, 1955, 1965, and 1973. Gibraltar did not show that actual use of the old marks had ceased. The evidence showed that not only did Prudential continue to use old stationery and related items, but that the company continued to commission advertisements using the old logos.

Title 15 U.S.C. § 1127 states, in relevant part, "A mark shall be deemed to be 'abandoned'—(a) When its use has been discontinued with intent not to resume." The section requires two elements, nonuse and intent not to resume use. *Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037 (2d Cir.1980). Abandonment of a trademark, being in the nature of a forfeiture, must be strictly proved. *United States Jaycees v. Philadelphia Jaycees*, 639 F.2d 134, 139 (3rd Cir.1981). The district court clearly erred in ignoring evidence of Prudential's continued use of its older marks. The order of the district court to cancel four of Prudential's service marks is vacated. In all other respects, the judgment is affirmed.

Affirmed in part, vacated in part.