**LUCASFILM LTD., a California corporation, and Lucas Licensing Ltd., a California corporation, Plaintiffs,**

v.

**MEDIA MARKET GROUP, LTD., et al., Defendants.**

**No. C 01–04041 CW.**

United States District Court, N.D. California.

Jan. 8, 2002.

David J. Anderman, San Rafael, CA, William Sloan Coats, III, Orrick Herrington & Sutcliffe, Menlo Park, CA, Vickie L. Feeman, Orrick Herrington LLP, Menlo Park, CA, San O'Rourke, Orrick Herrington & Sutcliffe LLP, Menlo Park, CA, for plaintiffs.

Evan Spender Feinberg, New York City, for defendant.

## ORDER DENYING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

WILKEN, District Judge.

Plaintiffs Lucasfilm Ltd. and Lucas Licensing Ltd. (Lucasfilm) move for a preliminary injunction enjoining Defendant Media Market Group (MMG) from further manufacture, sale, release, distribution, or shipment of the animated pornographic movie entitled "Starballz." Defendant MMG opposes the motion. Having considered the papers filed by the parties and oral argument on the motion, the Court denies the motion for a preliminary injunction and dissolves the temporary restraining order issued December 18, 2001.

## BACKGROUND

Lucasfilm filed a complaint against MMG and several other Defendants on October 26, 2001 for federal copyright infringement, trademark infringement, unfair competition, false designation of origin and trademark dilution; State unfair competition, false advertising and trademark dilution; and common law trademark infringement. The suit arises out of MMG's production and distribution of a pornographic animated film entitled "Starballz," which is allegedly based on Lucasfilm's "Star Wars" films and related properties. Lucasfilm holds various copyright and trademark registrations in protected material related to the film Star Wars, which Lucasfilm claims are being infringed, diluted and tarnished by Starballz. MMG claims that Starballz is a parody of the Star Wars films.

On December 18, 2001, the Court issued a temporary restraining order preventing further manufacture, sale, release, distribution, or shipment of Starballz by MMG, and ordering MMG to show good cause why a preliminary injunction should not issue.

## DISCUSSION

### I. Legal Standard

■ "The basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies." *Weinberger v. Romero–Barcelo,* 456 U.S. 305, 312, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982). To establish entitlement to a preliminary injunction, a moving party must demonstrate either: (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) that there exist serious questions regarding the merits and the balance of hardships tips sharply in its favor. *Rodeo Collection, Ltd. v. West Seventh,* 812 F.2d 1215, 1217 (9th Cir.1987); *California Cooler, Inc. v. Loretto Winery, Ltd.,* 774 F.2d 1451, 1455 (9th Cir.1985); *see also William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co.,* 526 F.2d 86, 88 (9th Cir.1975); *County of Alameda v. Weinberger,* 520 F.2d 344, 349 (9th Cir.1975). The test is a "continuum in which the required showing

of harm varies inversely with the required showing of meritoriousness." *Rodeo Collection*, 812 F.2d at 1217 (quoting *San Diego Comm. Against Registration & The Draft v. Governing Bd. of Grossmont Union High Sch. Dist.*, 790 F.2d 1471, 1473 n. 3 (9th Cir.1986)). To overcome a weak showing of merit, a plaintiff seeking a preliminary injunction must make a very strong showing that the balance of hardships is in its favor. *Rodeo Collection*, 812 F.2d at 1217.

## II. Likelihood of Success on the Merits

### A. Trademark Dilution

 Subject to the principles of equity, the owner of a famous mark is entitled to an injunction "against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark." 15 U.S.C. § 1125(c)(1). To prevail on its dilution claim, Lucasfilm must show that (1) the Star Wars mark is famous; (2) MMG is making a commercial use of the mark; (3) MMG's use began after the mark became famous; and (4) MMG's use of the mark dilutes the quality of the mark by diminishing the capacity of the mark to identify and distinguish goods and services. *See Sony Computer Entertainment, Inc. v. Connectix Corp.*, 203 F.3d 596, 608 (9th Cir.2000).

There can be no doubt that the Star Wars mark was famous prior to the release of Starballz in 2001.

 The statute defines dilution as the "lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of—(1) competition between the owner of the famous mark and other parties, or (2) likelihood of confusion, mistake, or deception." 15 U.S.C. § 1127. In authorizing courts to enjoin dilution, Congress intended "to protect famous marks from subsequent uses that blur the distinctiveness of the mark or tarnish or disparage it." H.R.Rep. No. 374, 104th Cong., 1st Sess. 3 (1995), *quoted in Ringling Brothers–Barnum & Bailey Combined Shows, Inc. v. B.E. Windows Corp.*, 937 F.Supp. 204, 208 (S.D.N.Y.1996). Starballz tarnishes the Star Wars family of marks by associating them with a pornographic film that is inconsistent with the image Star Wars has striven to maintain for itself. *See Toys "R" Us. Inc. v. Akkaoui*, No. C 96–3381 CW, 1996 WL 772709, at *3 (N.D.Cal.1996).

 However, trademark dilution does not apply to "noncommercial use of a mark." 15 U.S.C. § 1125(c)(4)(B). The exception for non-commercial use in § 1125(c)(4)(B) was explained by Senator Hatch in introducing the bill as follows: "The bill will not prohibit or threaten non-commercial expression, such as parody, satire, editorial and other forms of expression that are not part of a commercial transaction." 141 Cong. Rec. S19306, S19310 (daily ed. Dec. 29, 1995). An expressive use is not rendered commercial by the impact of the use on sales. *See Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 924 F.Supp. 1559, 1574 (S.D.Cal.1996), *aff'd*, 109 F.3d 1394 (9th Cir.1997) (citing *Va. Pharm. Bd. v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 762, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976)) (defining commercial speech as "speech which does no more than propose a commercial transaction"). Parody is a form of non-commercial, protected speech which is not affected by the Federal Trademark Dilution Act. *See Mattel, Inc. v. MCA Records, Inc.*, 28 F.Supp.2d 1120, 1155 (C.D.Cal.1998) (holding that even if parodic song "Barbie Girl" tarnishes the Barbie mark through its sexual or degrading lyrics, it falls within the "noncommer-

cial use of a mark" exception to the federal dilution statute).

Plaintiffs have therefore failed to establish a likelihood that they will prevail on the merits of their trademark dilution cause of action.

## B. Copyright Infringement

██ Starballz will likely survive Lucasfilm's copyright infringement claim because of the fair use doctrine. The 1976 Copyright Act established four factors to be considered and weighed by courts in determining if a fair use defense exists in a copyright infringement case: (1) the purpose and character of the accused use; (2) the nature of the copyrighted work; (3) the importance of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the accused use on the potential market for or value of the copyrighted work. 17 U.S.C. § 107; *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.,* 109 F.3d 1394, 1399 (9th Cir.1997).

██ Parody may be a defense to copyright infringement to the extent that it constitutes fair use. *See, e.g., Campbell v. Acuff–Rose Music, Inc.,* 510 U.S. 569, 578, 114 S.Ct. 1164, 127 L.Ed.2d 500 (1994). "The threshold question when fair use is raised in defense of parody is whether a parodic character may reasonably be perceived." *Id.* at 582, 114 S.Ct. 1164. The Supreme Court has stated that for the purposes of copyright law, "the heart of any parodist's claim to quote from existing material[ ] is the use of some elements of a prior author's composition to create a new one that, at least in part, comments on that author's works." *Id.* at 580, 114 S.Ct. 1164. Starballz is a parody of Star Wars, in that it is a "literary or artistic work that broadly mimics an author's characteristic style and holds it up to ridicule." *See Dr. Seuss,* 109 F.3d at 1401 (quoting American Heritage Dictionary definition of parody). A preliminary analysis of the fair use fac-

tors indicates that Lucasfilm is not likely to succeed in its copyright claim because the parodic nature of Starballz may constitute fair use.

## C. Trademark Infringement

██ Lucasfilm's trademark infringement claim is weak because there is little likelihood of confusion between Star Wars and Starballz. *See AMF, Inc. v. Sleekcraft Boats,* 599 F.2d 341 (9th Cir. 1979). Parody is not a defense to trademark infringement, but instead is relevant to show that there is little likelihood of confusion between an original mark and a parody of that mark. In this case, no reasonable consumer is likely to be confused between Star Wars and Starballz, which is labeled as an adult film, is animated, and is rarely sold in the same marketing channels as Star Wars. Further, the Star Wars films are so famous that it is extremely unlikely that consumers would believe that Starballz is associated with Star Wars or Lucasfilm. Moreover, because a parody is meant to comment on or criticize an original work, it is unlikely to be confused with the original work. Therefore, there does not appear to be a likelihood of success on the merits on this claim.

## III. Serious Questions Regarding the Merits and Balance of Hardships

Although Lucasfilm is unlikely to succeed on the merits of any of its claims, there are serious questions regarding the merits, including whether there is a likelihood of confusion between Star Wars and Starballz for purposes of trademark infringement, whether Starballz constitutes fair use as a parody for purposes of copyright infringement, and whether Starballz is a non-commercial use for purposes of trademark dilution. However, the balance of hardships does not tip sharply in favor

of Lucasfilm. It would be a significant financial hardship to MMG to enjoin it from manufacturing, advertising or selling Starballz, and such an action would threaten MMG's First Amendment rights. Therefore, a preliminary injunction is not appropriate.

## CONCLUSION

For the foregoing reasons, the Court DENIES Lucasfilm's motion for a preliminary injunction, and the temporary restraining order entered December 18, 2001 is hereby dissolved.

IT IS SO ORDERED.