### SONISTA, INC., Plaintiff,

v.

### David HSIEH; Techpac, Inc.; and Pixa, Inc., Defendant.

### No. C–04–04080 RMW.

United States District Court,
N.D. California,
San Jose Division.

Dec. 17, 2004.

---

Diane J. Mason, David J. Brezner, San Francisco, CA, Counsel for Plaintiffs.

John McIntyre, Jr., Counsel for Defendants.

## ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION

WHYTE, District Judge.

Plaintiff Sonista Corp. ("Sonista") moves for a preliminary injunction against David Hsieh ("Hsieh"), Techpac, Inc. ("Techpac"), and Pixa, Inc. ("Pixa") preventing defendants from using the DVONE mark initially registered to Sonista but which Sonista alleges was fraudulently sold to Techpac. The motion was heard on November 5, 2004. The court has read the moving and responding papers and considered the arguments of counsel. For the reasons set forth below, the court grants plaintiff's motion.

## I. BACKGROUND

### A. The Parties

Plaintiff Sonista, along with its majority shareholder Eastern Asia Technology Group, Ltd. ("Eastech"), is in the business of developing, manufacturing, and distributing consumer electronic audio and video products. From 2001 to March 5, 2004, defendant Hsieh was the General Manager and President of Sonista. He is presently a member of Sonista's board of directors and owns 20% of its shares. Defendant Techpac is a corporation to which Hsieh sold the DVONE mark. The CEO of Techpac is Mei–Hui Lee, Hsieh's wife. After the mark was sold, defendant Pixa licensed the DVONE mark from Techpac. Hsieh is currently vice president of product marketing at Pixa. Sonista, Techpac, and Pixa are all California corporations.

### B. Registration and Sale of DVONE

Sonista registered the DVONE mark with the Patent and Trademark Office, No. 2807215 for use in the sale of various consumer electronic products including DVD players, CD players, audio amplifiers, loud speakers, and MP3 players.

Thunell Dec. Supp. Prelim. Inj. ¶ 5, Ex. 4. It also owns a Japanese registration number for DVONE DIGITAL AUDIO and a European Union registration number for DVONE DIGITAL AUDIO VIDEO, both design marks.

During 2002 and 2003, Sonista sold electronic audio and video products bearing the DVONE trademarks in the amount of $1,000,000 in the United States and abroad. Hallam Dec. Supp. Prelim. Inj. ("Hallam Dec. 1") ¶ 4. In Spring 2003, Sonista ceased to market products under its DVONE mark after receiving complaints from Eastech that Sonista was selling DVONE products into the same markets as Eastech's original equipment manufacturer customers. Hsieh Dec. ¶ 3, Ex. 1.

On October 8, 2003, while holding the title of President of Sonista, Hsieh executed a trademark purchase agreement with Techpac selling the DVONE mark for $1000. Hsieh's wife, the CEO of Techpac, signed the trademark purchase agreement on Techpac's behalf. Sonista alleges that this transaction was done without board approval, while Hsieh contends that he was instructed by Eastpac to sell Sonista's assets following the company ceasing to market products under the DVONE mark. No meeting was held prior to the sale to authorize transfer Sonista intellectual property assets. Hallam Dec. 1 ¶ 8; Liou Dec. ¶ 6.

Techpac later licensed the DVONE mark to Pixa. Hsieh was neither an employee nor shareholder of either Techpac or Pixa at the time and disclaims involvement with the licensing transaction. Hsieh Dec. ¶ 5. Under that licensing agreement, which terminated in late September 2004 as a result of the present suit, Pixa paid DVONE a total of $600.50. Shao Dec. ¶ 4, 6; Lee Dec. ¶ 3, 5. Techpac represents that it has no intention of licensing the DVONE mark or using it

pending the outcome of the case. Lee Dec. ¶ 4.

## C. Infringement and Suit

On September 9, 2004, Gary Thunnel, a paralegal at Dorsey & Whitney, Sonista's counsel in this matter, ordered speakers from www.pixainc.com. The online purchase request forwarded to www.dvdoneonline.com/eshop. The speakers arrived in packaging bearing the DVONE mark (along with a typo in the description of the product). Thunnel Dec., Ex. 3; Hsieh Dec., Exh 10. Thunnel photographed the items received pursuant to that order. Thunnel Dec., Ex. 3.

Sonista filed a complaint on September 27, 2004 alleging against all defendants (1) trademark infringement under section 32(1) of the Lanham Act; (2) infringement and false designation of origin under section 43(a) of the Lanham Act; (3) trademark infringement under California Business and Professions Code section 14335; and (4) unfair competition under California Business and Professions Code section 17200. The complaint further alleges conversion against Hsieh and Techpac, seeking declaratory relief, restitution and rescission, and cancellation of instruments used to convey Sonista's trademarks. Finally, the complaint asserts that Hsieh breached both his duty of care and his duty of loyalty to Sonista.

Hsieh contends that this suit is merely a pressure tactic by Eastpac to motivate him to purchase Sonista on unfavorable terms. Although he provides no details, Hsieh states that his negotiations to purchase Sonista broke down entirely in the spring of 2004, prompting the present suit. Opp. Prelim. Inj. at 4.

## II. ANALYSIS

■ In a trademark case, a plaintiff is entitled to a preliminary injunction by

demonstrating either: (1) a combination of "probable success on the merits" and "the possibility of irreparable injury;" or (2) the existence of "serious questions going to the merits" and that "the balance of hardships tips sharply in [plaintiff's] favor." *GoTo. com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1204–1205 (9th Cir.2000) (quoting *Sardi's Restaurant Corp. v. Sardie*, 755 F.2d 719, 723 (9th Cir.1985)). "These are not two distinct tests, but rather the opposite ends of a single 'continuum in which the required showing of harm varies inversely with the required showing of meritoriousness.'" *Rodeo Collection Ltd. v. W. Seventh*, 812 F.2d 1215, 1217 (9th Cir. 1987); *J.K. Harris & Company v. Kassel*, 253 F.Supp.2d 1120, 1123 (N.D.Cal.2003). "To overcome a weak showing of merit, a plaintiff seeking a preliminary injunction must make a very strong showing that the balance of hardships is in its favor." *Kassel*, 253 F.Supp.2d at 1123 (citing *Rodeo Collection*, 812 F.2d at 1217); *Lucasfilm Ltd. v. Media Market Group, Ltd.*, 182 F.Supp.2d 897, 899 (N.D.Cal.2002).

## A. Ownership of the Mark

■ The court first considers the parties' disputed ownership over the DVONE mark. Defendants argue that Techpac, not Sonista, owns the DVONE mark and have submitted evidence that the trademark assignment from Sonista to Techpac was recorded with the United States Patent and Trademark Office ("USPTO"). McIntyre Dec., Ex. 1. Federal registration of the mark is prima facie evidence that the registrant is its owner. 15 U.S.C. §§ 1057(b), 1115(a). 15 U.S.C. section 1060 permits recordation of trademark assignments with the USPTO. Recording an assignment with the USPTO protects the assignee from subsequent purchasers without notice. *Id.* § 1060(a)(4). A recorded assignment of mark is prima facie valid, thus the burden falls on the challenging party to prove otherwise. *Cortes v. Schenley Distillers, Inc.*, 53 C.C.P.A. 759, 353 F.2d 248, 250 (Cust. & Pat.App. 1965).

■ Sonista does not contest that Hsieh recorded the assignment to Techpac with the USPTO, rather it argues that Hsieh did not have authority to sell the DVONE mark, rendering the transfer and subsequent assignment invalid. Hsieh contends he was following instructions from his superiors at Eastech when he sold the DVONE mark along with other Sonista assets, including computers, office equipment, and telecom supplies. Notably, Hsieh does not name these superiors, nor does he provide any declarations in support of his argument regarding the authority they supposedly granted to him.

California Corporations Code section 1001 provides that an officer has no power to dispose of all, or substantially all, of a corporation's assets without board approval. Sonista's board never met to give Hsieh such approval. Liou Dec. ¶ 6. Sonista contends that because DVONE was its only brand under which it had made $1,000,000 in sales, selling the mark constituted a sale of substantially all of Sonista's assets and required board approval. Hsieh responds simply that he was unaware that he needed board approval for such a sale.

Sonista also presents strong evidence that Hsieh engaged in a self-interested transaction by selling the DVONE trademark to Techpac, a company for which his wife was CEO. The trademark purchase agreement was executed by an officer of each company; Hsieh for Sonista and Hsieh's wife for Techpac. As Hsieh presumptively has an interest in a company of which his wife is a controlling officer, such a transaction requires approval by disinterested shareholders or disinterested directors under California Corporations Code section 310. Hsieh counters this ar-

gument by invoking California's safe harbor provision, which provides that an interested transaction is not void if it is "just and reasonable." Cal. Corp.Code § 310(a)(3). He then attempts to justify the $1000 sale price of the mark by stating that the licensing mark to the company for which he now works "generated a paltry $600 for Techpac."[1] Opp. Prelim. Inj. at 7. The court finds this argument unconvincing.

Finally, defendants argue that, whatever Hsieh's authorization to sell Sonista's assets, Techpac was a purchaser in good faith of the DVONE mark and that Pixa licensed the mark in good faith from Techpac. Aside from Hsieh's assertion that he was not involved in this transaction, defendants have produced no evidence that this is so. In fact, the circumstances suggest entirely otherwise: Hsieh, allegedly without authorization, executes a contract with his wife's company to sell the DVONE mark, which company then licenses the mark to a company in which Hsieh later comes to hold the position of vice president of product marketing. These circumstances strongly suggest that Techpac was not a purchaser in good faith. Overall, the court is convinced there is a strong possibility that the transfer of the DVONE mark to Techpac is invalid and voidable, making Sonista the owner of the mark.

### B. Trademark Infringement

#### 1. Likelihood of Confusion

 At the preliminary injunction stage of a trademark infringement case, a plaintiff "must establish that it is likely to be able to show ... a likelihood of confusion." *GoTo.com Inc.*, 202 F.3d at 1205 (citations omitted). "Likelihood of confusion exists when customers viewing the mark would probably assume that the product or service it represents is associat-ed with the source of a different product or service identified by a similar mark." *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1265 (9th Cir.2001). As "[t]he likelihood of confusion is the central element of trademark infringement," the court "may presume irreparable injury" if there is a "showing of likelihood of success on the merits." *GoTo.com Inc.*, 202 F.3d at 1205, 1209 (citation omitted).

 The Ninth Circuit's general test for determining a likelihood of confusion for service marks consists of eight factors (commonly referred to as the "*Sleekcraft* factors"): (1) the similarity of the marks; (2) the relatedness of the two companies' services; (3) the marketing channels used; (4) the strength of plaintiff's mark; (5) defendant's intent in selecting the mark; (6) evidence of actual confusion; (7) the likelihood of expansion into other markets; and (8) the degree of care likely to be exercised by purchasers. *GoTo.com, Inc.*, 202 F.3d at 1205 (citing *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–349 (9th Cir.1979)). "Some factors are much more helpful than others, and the relative importance of each individual factor will be case specific .... [I]t is often possible to reach a conclusion with respect to likelihood of confusion after considering only a subset of the factors." *Thane Intern., Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 901 (9th Cir.2002) (citing *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999)).

 The DVONE trademark used by the defendants is identical to the DVONE mark registered by plaintiffs. Further, the logo on products ordered from the www.pixainc.com website strongly resembles the design mark registered in the EU. *Compare* Thunnel Dec., Ex. 3 *with id.*, Ex.

---

1. Defendants use the same argument to contend that the mark is not valuable to Sonista.

5 at 2. The letters of the mark in both cases are capitalized with "DV" in a dark color and "ONE" in a lighter color.

Most important for purposes of the likelihood of confusion analysis is that defendants are using the DVONE mark on the same type of consumer electronics that plaintiff is in the business of manufacturing. "Related goods are generally more likely than unrelated goods to confuse the public as to the producers of the goods." *Brookfield*, 174 F.3d at 1055; *GoTo.com*, 202 F.3d at 1206. "Related goods are those products which would be reasonably thought by the buying public to come from the same source if sold under the same mark." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1147 (9th Cir.2002) (quoting *Sleekcraft*, 599 F.2d at 348, n. 10). As set forth above, the DVONE mark is registered for use on consumer electronics products, which includes speaker systems. Plaintiff has submitted evidence that defendants sold consumer electronics, specifically a speaker system, bearing the DVONE mark as recently as September 2004. This is strong evidence that confusion is likely.

Furthermore, defendants have utilized the DVONE mark on webpages and in emails to market their consumer electronics products. These are marketing channels which Sonista is similarly likely to use to market their products to consumers.

The final highly relevant factor is intent to confuse. While intent to confuse customers is not required to demonstrate a likelihood of confusion, *see GoTo.com*, 202 F.3d at 1208, "intent to deceive is strong evidence of a likelihood of confusion," *Entrepreneur Media*, 279 F.3d at 1148 (quoting *Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 184 F.3d 1107, 1111 (9th Cir. 1999)). The Ninth Circuit has held than when an alleged infringer knowingly adopts a mark similar to anothers, courts will presume intent to deceive the public.

*Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1394 (9th Cir.1993). Plaintiff has successfully argued that defendants have demonstrated intent to deceive in their behavior. The defendants have arranged a deal resulting in the licensing of the disputed mark to a company that sells consumer electronics and at which Hsieh is the vice president of product marketing.

### 2. Abandonment

To successfully assert abandonment by nonuse, a defendant must show (1) nonuse of the mark and (2) intent not to resume its use. 15 U.S.C. § 1127 ("A mark shall be deemed to be 'abandoned' ... [w]hen its use has been discontinued with intent not to resume such use."); *see also Prudential Ins. Co. v. Gibraltar Fin. Corp.*, 694 F.2d 1150, 1156 (9th Cir.1982). Under the Lanham Act, nonuse for 3 consecutive years is prima facie evidence of abandonment. *Id.*

The parties do not contest that Sonista sold products under the DVONE name as recently as Spring 2003, Hsieh Dec. ¶ 3, thus the Lanham Act's statutory abandonment period does not assist defendants in making out a prima facie case. Defendants present evidence that Sonista's board voted to dissolve the company on April 22, 2004. *Id.* ¶ 8, Ex. 3. However, mere dissolution of the trademark holder does not amount to an extinction of the rights of the parties in that mark. Dissolution must be coupled with an intent to discontinue interest in the mark and the good will accompanying it. *Durango Herald, Inc. v. Riddle*, 719 F.Supp. 941, 945 (D.Colo.1988). Moreover, this April 2004 vote to dissolve the company and liquidate its assets cannot serve as Hsieh's authorization to sell the DVONE mark to Techpac first, because the sale happened at least six months before the vote in October 2003 and, second, because Hsieh resigned all

offices he held with Sonista at that meeting.

At best, defendants have demonstrated that Sonista was reevaluating its marketing program and was putting the DVONE mark on hold. The "Business Plan Update" slide submitted by Hsieh indicates that Sonista needed to further evaluate its DVONE promotion program due to the complaints from Eastech and lack of engineering resources. Hsieh Dec. Ex. 2. This does not sufficiently evidence the company's intent to discontinue interest in the DVONE mark.

### C. Preliminary Injunction

■■■ Under either of the two preliminary injunction tests, Sonista demonstrates that it is entitled to relief in this case. With regard to the first test, Sonista has made a strong showing that (1) the transfer to Techpac was invalid and (2) that it would have probable success on the merits with respect to trademark infringement due to a strong likelihood of confusion between the parties' use of the DVONE mark on consumer electronics equipment marketed in similar channels. In trademark cases, "irreparable injury may be presumed from a showing of likelihood of success on the merits." *GoTo. com*, 202 F.3d at 1205 n. 4 (acknowledging that the two prongs of the test conflate to the likelihood of success of the merits analysis in trademark cases). Sonista has further demonstrated that the packaging used by defendants contains typographical errors, impacting the goodwill associated with the DVONE mark.[2] Defendants' arguments that Sonista will not suffer irreparable harm because the mark is not in use

and is not valuable fail for the reasons set forth above in the discussions of abandonment and trademark ownership respectively.

■■■ Plaintiff also meets the requirement of the second test. There are serious questions with regard to Techpac's ownership of the mark, particularly regarding Hsieh's authorization to transfer the DVONE mark to Techpac, given the self-interested nature of the transaction. As defendants have represented that they do not intend to use, license, or otherwise transfer the mark pending the conclusion of this action, an injunction preventing them from taking any actions during the pendency of this litigation would pose no burden to them. The balance of hardships thus tips strongly in Sonista's favor. Accordingly, the court grants Sonista's motion for a preliminary injunction.

### III. PRELIMINARY INJUNCTION ORDER

For the foregoing reasons, the court finds that plaintiff has demonstrated the requisite likelihood of success on the merits of its claims that it, not Techpac, owns the DVONE mark and that defendants' use of the DVONE mark has caused, and is likely to continue causing, confusion among consumers as to association, affiliation, or sponsorship between plaintiff and defendants, that this conduct violates Section 32(1) of the Lanham Act, 15 U.S.C. § 1114; Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and sections 14335 and 17200 of the California Business and Professions Code. The court further finds that as a result of this confusion, plaintiff

---

**2.** Although the court was concerned at the initial TRO hearing regarding the timeliness of Sonista's request for relief given that the sale of the trademark to Techpac occurred in October 2003 and the request for a TRO was not filed until a year later, Sonista's arguments in response to defendants' opposition regarding Hsieh's alleged concealment of the sale are persuasive. *See* 2d Hallam Decl. Supp. Prelim. Inj. ¶¶ 13–14, 16; Reply Prelim. Inj. at 8.

will suffer irreparable harm; and alternatively, that plaintiff has demonstrated serious questions going to the merits and that the balance of hardships tips strongly in its favor.

IT IS FURTHER ORDERED, ADJUDGED, and DECREED that, pending resolution of this action:

1. The defendants, their officers, directors, agents, servants, employees and attorneys, and any and all persons acting or attempting to act in concert or participation with them, are enjoined during the pendency of this action from using plaintiff's DVONE mark or any confusingly similar variation thereof;

2. Defendants shall, within seven days of the date of this Preliminary Injunction, provide a copy of this Preliminary Injunction to all of their respective officers, agents, servants, employees, representatives and partners; and

3. This Preliminary Injunction shall take effect immediately upon plaintiff's filing with the court a bond in the amount of $7,500.00, pursuant to Federal Rule of Civil Procedure 65(c).