FIRST FRANKLIN FINANCIAL CORPORATION, a Delaware corporation, Plaintiff,

v.

FRANKLIN FIRST FINANCIAL, LTD., a New York corporation, Defendant.

No. C 04–02842 WHA.

United States District Court, N.D. California.

Feb. 10, 2005.

Patrick E. Guevara, Everitt George Beers, Kevin R. Martin, McNichols Randick O'Dea & Tooliatos LLP, Pleasanton, CA, for Plaintiff.

Dickerson M. Downing, Morgan & Finnegan, LLP, New York City, Eric Nord Hoover, Morgan & Finnegan, San Francisco, CA, for Defendant.

## ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

ALSUP, District Judge.

### INTRODUCTION

In this action alleging trademark infringement, false designation of origin, and a violation of the Anticybersquatting Consumer Protection Act, ("ACPA"), plaintiff First Franklin Financial Corporation seeks preliminary injunctive relief. At oral argument, plaintiff's counsel emphasized that this lawsuit was provoked by a fear that defendant was planning to expand its business to California. This belief was primarily based on recent changes to defendant's website and a trade-name application filed within the state. Subsequently, defendant voluntarily withdrew this application. At the hearing, defendant's counsel further agreed to refrain from resubmitting its trade-name application, pending the outcome of this action. Defendant has also represented that it would be willing to voluntarily change its website to (1) eliminate the drop-down list of states, including California and (2) modify the legal disclaimer therein to clarify that Franklin First "may," rather than "will," submit requests to a third-party lender, if the property is located in a state for which it does not hold a mortgage-lending license.

For the foregoing reasons and because this order finds that plaintiff fails to demonstrate either probable success on the merits or that the balance of hardships tips sharply in its favor, the preliminary-injunction motion is DENIED.

### STATEMENT

Plaintiff First Franklin Financial Corporation is a national mortgage lender incorporated in Delaware, but headquartered in San Jose, California (Pollock Decl. ¶ 4). Since 1981, plaintiff has gradually expanded and now has 36 branch offices throughout the United States (*ibid.*). Plaintiff alleged it had held registered trademarks on a stylized logo with the phrase "F–I–R–S–T Franklin" (No. 1,843,185) and the word mark "First Franklin" (No. 1,929,915) for use in mortgage-banking and mortgage-brokerage services since July 5, 1994, and October 24, 1995, respectively (Request for Judicial Notice Exhs. 1 & 2).[1] Plaintiff's website *www.ff.com* displays its logo and the slogan "FIRST FOR A REASON" underneath (Witmer Decl. Exh. 2).

---

1. At the hearing, however, plaintiff conceded that registered trademark No. 1,843,185 has expired and acknowledged that No. 1,929,915 has recently been assigned to its parent company, National City Company, as part of an internal restructuring. Accordingly, this order does not focus on these registered trademarks.

Defendant was incorporated in New York on June 7, 1993, under the name Wholesale Mortgage Corp., but subsequently changed its name to Franklin First Financial, Ltd. on November 15, 1993 (Guevara Decl. Exh. 2). Plaintiff was "investigating available domain names that contain [its] marks and trade names" around May 2004 and discovered defendant's use of allegedly similar domain names and trade names (Witmer Decl. ¶ 8). Plaintiff notified defendant on July 20, 2004, demanding that defendant "immediately cease and desist all uses of marks containing the elements FRANKLIN FIRST, FIRST. FOR SO MANY REASONS, and other similar marks in connection with mortgages" (Guevara Decl. Exh. 6).

Plaintiff now moves for a preliminary injunction which would prevent defendant from using any trade names, trademarks, or domain names which are confusingly similar to plaintiff's mark "First Franklin" or plaintiff's trade names "First Franklin Financial Corporation" and "First Franklin Financial" (Br. 1). (Defendant has simultaneously moved to dismiss the second amended complaint for lack of personal jurisdiction, or in the alternative, to transfer venue. Those two motions will be addressed in a separate order.)

## ANALYSIS

### 1. LEGAL STANDARD.

■ A preliminary injunction is appropriate in a trademark case when plaintiff demonstrates "either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) the existence of serious questions going to the merits and that the balance of hardships tips sharply in its favor." To show probable success on the merits, a plaintiff alleging trademark infringement must establish that it is likely to be able to show a likelihood of confusion between the marks. *GoTo.com, Inc. v. Walt Disney Co.,* 202 F.3d 1199, 1205 (9th Cir.2000) (internal citations omitted). If successfully demonstrated, irreparable injury to the plaintiff may be presumed. *Nautilus Group, Inc. v. Icon Health and Fitness, Inc.,* 372 F.3d 1330, 1334 (2004).

Trademarks (*i.e.,* symbols used to identify and distinguish goods or services) and trade names (*i.e.,* symbols used to distinguish companies, partnerships and businesses) are technically distinct; the major legal distinction between the two is that "trade names cannot be registered and are therefore not protected under 15 U.S.C. 1114."[2] As a practical matter, cases, like this one, typically involve challenges to both trademarks and trade names. The Ninth Circuit has held that "likelihood of confusion is unquestionably the key to a finding of infringement in either case." *Accuride Int'l, Inc. v. Accuride Corp.,* 871 F.2d 1531, 1534–35 (9th Cir.1989). Because liability under the ACPA also turns on whether defendant's domain names are "identical or confusingly similar" to plaintiff's marks, plaintiff's probable success on the merits of this claim will also depend on its ability to demonstrate a likelihood of confusion. 15 U.S.C. 1125(d)(1)(A).

■ An eight-factor test is employed to determine whether there exists a likelihood of confusion. Those factors are: (1) similarity of the marks; (2) proximity or relatedness of the goods or services; (3) strength of plaintiff's mark; (4) marketing channels; (5) the degree of care likely to be exercised by purchasers; (6) defendant's intent; (7) evidence of actual confusion; and (8) likelihood of expansion. *Brookfield Communications, Inc. v. West Coast Entm't Corp.,* 174 F.3d 1036, 1054 (9th Cir.1999). Most of these so-called

---

**2.** 15 U.S.C. 1114 protects federally-registered trademarks from infringement.

*Sleekcraft* factors are questions of fact. *See Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1265 (9th Cir.2001).

"Some factors are much more important than others and the relative importance of each individual factor will be case-specific." In fact, "it is often possible to reach a conclusion with respect to likelihood of confusion after considering only a subset of the factors." *Brookfield*, 174 F.3d at 1054. This order will· analyze the *Sleekcraft* factors roughly in the order of importance for this particular case.

**2. PLAINTIFF HAS FAILED TO SHOW LIKE-LIHOOD OF SUCCESS ON THE MERITS.**

■ Independent of whether plaintiff prevails in the other two motions now pending, it is not entitled to preliminary injunctive relief because it has failed to demonstrate a probable success on the merits. Plaintiff argues that in a close case amounting to a tie, doubts as to whether there is a likelihood of confusion should be resolved in favor of the senior user. *Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1404 n. 14 (9th Cir.1997). As explained below, however, this is not such a close case.

**A. Similarity of the Marks.**

■ As an initial matter, the Court notes that plaintiff's and defendant's marks must be assessed in their entirety as they are encountered by consumers in the marketplace, with similarities weighed more heavily than differences. *Brookfield*, 174 F.3d at 1054. Examples of the marks as they appear on plaintiff's and defendant's websites, respectively, are below:

**Plaintiff**

**Defendant**

Plaintiff argues that where the primary difference between the marks is the mere transposition of elements that compose the marks, a likelihood of confusion should be found (Br. 7; Reply Br. 4). Plaintiff further alleges that defendant recently made changes to its logo to decrease the size of the image of Benjamin Franklin and highlight the word "First" in yellow to emphasize it (Reply Br. at 2–3). These arguments are not persuasive. While there is a transposition of the words "First" and

"Franklin" and some similarity between the slogans, even a cursory visual examination of the parties' marks leads to the conclusion that there is a reduced chance of confusion between the two. Plaintiff's mark utilizes a logo resembling a house, while defendant's mark incorporates an · image of Benjamin Franklin. In addition, plaintiff's mark explicitly identifies its source as "A National City Company." Defendant's use of a different color scheme (*i.e.*, purple, yellow and white contrasted with plaintiff's teal and black) also renders these two marks readily distinguishable in appearance.[3]

3. Because plaintiff does not appear to own registered trademark No. 1,929,915, this or-

der does not compare defendant's mark to the word mark "First Franklin."

█ With respect to the domain names, the Ninth Circuit has indicated that a similarity in domain names is "irrelevant as a matter of law" to the question of whether there is a likelihood of confusion between the parties' marks. *Brookfield*, 174 F.3d at 1055. Nonetheless, in a Google search for "First Franklin," plaintiff's website was both a sponsored link and the first result listed. Meanwhile, defendant's website did not even appear in the first 100 hits; the Court declined to review all 10,900,000 results. Indeed, even in a Google search for "Franklin First," plaintiff's website again appeared as a sponsored link and appeared as the fourth hit. Certainly, it is true that anyone manually typing the URL *www.franklinfirstfinancial.com* will find defendant's website, but such persons would only do so, in all likelihood, in an attempt to specifically locate defendant's website and would in no way be confused. Overall, this order finds that this *Sleekcraft* factor weighs in defendant's favor.

## B. Degree of Care Likely to be Exercised by Purchasers.

In assessing likelihood of confusion, we look to "the reasonably prudent purchaser exercising ordinary caution," but note that "buyers will exercise greater care in their purchases of expensive goods." *Official Airline Guides v. Goss*, 6 F.3d 1385, 1393 (9th Cir.1993). Mortgage loans often exceed $100,000; for many people, a home-mortgage loan is the single most important expenditure of their lives (Assini Decl. ¶ 12).

In light of this fact, the risk of confusion is even further diminished by the degree of care likely to be exercised by purchasers. *Compare Golden W. Fin. v. WMA Mortgage Servs.*, 2003 WL 1343019 at *5 (N.D.Cal.2003) (citing other court decisions recognizing that "mortgage consumers exercise a high degree of care in their purchasing decisions since buying a home is one of the most significant transactions people will make in their lifetimes"). This factor also weighs in defendant's favor.

## C. Marketing Channels/Proximity or Relatedness of the Goods or Services.

Defendant's website clearly indicates that it only holds state mortgage-lending licenses in the following nine states: New York, New Jersey, Massachusetts, Florida, Connecticut, Colorado, Georgia, North Carolina and Michigan. Because both parties maintain websites and solicit business via the Internet, however, the overlap in marketing channels weighs in plaintiff's favor. But, given that almost every business has a website nowadays, a likelihood of confusion would be found in nearly every case unless this factor was accorded less weight than others.

As for the proximity of the services, defendant concedes that both parties are in the mortgage-lending business. It is questionable, however, whether their services are directed towards the same consumers. Plaintiff's First Franklin website contains a disclaimer that it "is intended for use by real estate professionals only, and is not intended for or as an advertisement to the general public." In contrast to plaintiff's "wholesale" mortgage business, defendant claims to be a "retail" mortgage banker, with services aimed directly at consumers seeking mortgage loans. While both parties may deal with mortgage brokers acting on behalf of consumers, such sophisticated parties are even less likely to be confused by any alleged similarity between the marks.

Plaintiff argues that the distinction between "wholesale" and "retail" marketing is irrelevant because the marketing channels "ultimately converge on the same purchasers" (Reply Br. 5–6). Yet, plaintiff's own corporate restructuring to "spin-off the online direct sales division [which offers First Franklin mortgage loans directly to the public] into a separate entity under the trade name 'NationPoint' " belies its assertion that targeting brokers is indistinguishable from directly targeting consumers (Corsi Decl. ¶¶ 6–7). Thus, this factor weighs in defendant's favor.

### D. Strength of Plaintiff's Mark.

On balance, this order finds that this factor is neutral. Though plaintiff points to the incontestability of the registered trademarks as well as its extensive advertising efforts as evidence of the strength of its marks, this alone is not sufficient to meet plaintiff's burden of demonstrating that its use of "First Franklin" or "First For a Reason" is either inherently distinctive or have acquired sufficient secondary meaning to be considered strong. Furthermore, plaintiff has conceded that one of its registered trademarks has expired and the other has been assigned to its parent company. As the owner of *no* registered trademarks, incontestable or not, it is not entitled to any presumption that its marks are strong.

Moreover, defendant points to numerous examples of third-party use of marks incorporating the words "First" and "Franklin" for banking or financial services; many of these also use depictions of Benjamin Franklin to evoke an impression of being financially prudent (Opp. 11–13). Indeed, plaintiff does not even own the domain names *www.firstfranklin.com*, *www.firstfranklinfinancial.com*, or *http://www.firstforareason.com*, which are the most similar to plaintiff's claimed marks. Plaintiff argues that many of these banking or investment brokerage examples used by third parties are irrelevant because those industries are distinct from mortgage lending (Reply Br. 7). This argument is not persuasive. *Compare Golden W. Fin.*, 2003 WL 1343019 at *3 (finding a mortgage lender's marks weak by comparing to companies within the financial and mortgage brokerage industries).

Nonetheless, though defendant's proffered evidence may be useful in evaluating whether plaintiff's marks have acquired secondary meaning, the Ninth Circuit has noted that "such evidence can cut both ways." *Playboy Enters., Inc. v. Netscape Communications Corp.*, 354 F.3d 1020, 1027 n. 33 (9th Cir.2004). Taking this into consideration, this *Sleekcraft* factor weighs in neither party's favor.

### E. Defendant's Intent.

Plaintiff acknowledges that it has not yet had an opportunity to discover evidence of defendant's intent. Instead, plaintiff relies upon largely unsubstantiated assertions that defendant purposely changed its name to Franklin First Financial Ltd. to "palm off plaintiff's goodwill." There is circumstantial evidence that defendant changed its name at around the same time as plaintiff's "first major expansion from the West Coast to the East Coast" and its first application for a registered trademark (Br. 9–10). But such a coincidence, while it could suggest defendant's bad intent, is insufficient for plaintiff to meet its burden of establishing probable success on the merits for a preliminary injunction.

In addition, plaintiff's first application for a registered trademark (No. 1,843,185) was for a stylized logo with the phrase "F–I–R–S–T Franklin" (shown below), which is even less likely to be confused with defendant's designations. In any case, plaintiff's rights in this trademark were allowed to expire, presumably because plaintiff is no longer using this logo.

With regard to the registered *word* mark "First Franklin" (No. 1,929,915), the USPTO website indicates that plaintiff did not even apply for this trademark until November 9, 1994. As such, plaintiff can hardly argue that defendant had constructive notice of anything other than its stylized logo when it was changing its name in November 1993. Considering how many other banks and financial companies have chosen trade names with allusions to Benjamin Franklin, defendant's selection of Franklin First Financial Ltd. might have been perfectly innocent. Based on the record currently before it, however, the Court finds that this factor does not favor either party.

### F. Remaining *Sleekcraft* Factors.

Given the facts of this case, the remaining *Sleekcraft* factors do not add much to the analysis of "likelihood of confusion." The parties agree that the likelihood of product expansion is relatively unimportant. Also, at this early stage of the case, neither party has had the opportunity to produce evidence of the absence or presence of actual confusion.

### G. Defendant's Possible Defenses.

Defendant has also asserted that the equitable doctrine of laches would bar all of plaintiff's claims. Defendant claims it has used the name "Franklin First Financial" continuously since 1993 and has maintained the websites *www.franklinfirstfin.com* and *www.franklinfirstfinancial.com* for over five years; until defendant received a letter from plaintiff in July 2004, plaintiff never objected to its use of the allegedly similar marks or domain names (Assini Decl. ¶¶ 3–4). By plaintiff's own admission, it did not even discover defendant's existence until May 2004, when it was investigating available domain names for its own use (Witmer Decl. ¶ 8). Plaintiff has proffered no explanation of why, with reasonable diligence, it could

not have discovered defendant's use of allegedly similar marks earlier. That defendant has at least a plausible chance of succeeding in its laches defense only further supports the finding that plaintiff is unable to demonstrate probable success on the merits.

Plaintiff asserts that "laches is not a favored defense in trademark cases, where the overriding interest at stake is to avoid public confusion" (Reply Br. 10). Even if this is true, defendant would not be precluded from asserting this defense. The Ninth Circuit has specifically held that a defendant in a trademark case may assert laches, even if the plaintiff's mark has achieved incontestable status. *Prudential Ins. Co. of Am. v. Gibraltar Fin. Corp. of Calif.*, 694 F.2d 1150, 1153 (9th Cir.1982). Regardless, as described above, plaintiff has failed to establish that it is likely to succeed in demonstrating a likelihood of confusion.

Plaintiff also responds that defendant's use of the phrase "FRANKLIN FIRST did not pose a real threat" to plaintiff until recently, when defendant made changes to its logo, registered the additional domain names *www.franklinfirst.net* and *www.franklinfirst.biz* (in 2003 and 2004, respectively), and filed a (subsequently-withdrawn) trade-name application in California (Reply Br. 10). This assertion oddly appears to reinforce defendant's position that there is little chance of confusion between the two marks. At the very least, plaintiff appears to be conceding that there had been little risk of confusion before the recent changes. Considering that the two websites listed above are currently non-operational and that defendant voluntarily withdrew its trade name application in California, it appears that there is *still* no real threat of confusion pending a trial on the merits. Thus, preliminary injunctive relief is unnecessary.

## H. Plaintiff's ACPA Claim

Because plaintiff's ACPA claim also depends on a showing that the marks are confusingly similar, plaintiff also fails to demonstrate probable success on the merits of this claim for the same reasons described above.

### 3. Plaintiff Fails to Demonstrate that the Balance of Hardships Tips Sharply in its Favor.

 Under the alternative test for whether a preliminary injunction would be appropriate, plaintiff could demonstrate the existence of serious questions going to the merits and that the balance of hardships tips sharply in its favor. Even assuming *arguendo* that there are serious questions going to the merits, plaintiff has failed to demonstrate that the balance of hardships tips sharply in its favor.

On the contrary, plaintiff's alleged delay in enforcing its intellectual-property rights undercuts its claims of urgency and irreparable harm. There is also no indication that defendant has tarnished its reputation or engaged in any illegal activity from which plaintiff would wish to dissociate itself.

The balance of the hardships tips, if at all, in defendant's favor. If the requested relief were granted, defendant would be forced to change its website as well as countless promotional materials. Not only would defendant incur significant costs in doing so, but it would also lose any goodwill and recognition it has earned in the name Franklin First Financial Ltd. over the last ten years.

In contrast, denying preliminary injunctive relief causes plaintiff no harm because defendant has already voluntarily withdrawn its trade-name application in California and agreed not to resubmit any such applications for the duration of this litigation. Defendant has also abstained from posting any content at its recently-acquired websites *www.franklinfirst.net* and *www.franklinfirst.biz*. Moreover, if plaintiff ultimately prevails after a trial on the merits, injunctive relief would be available at that time.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for a preliminary injunction is Denied.

## IT IS SO ORDERED.