E–SYSTEMS, INC., Appellee,

v.

MONITEK, INC., Appellant.

No. 82–4699.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 15, 1983.

Decided Oct. 25, 1983.

As Amended Dec. 5, 1983.

Malcolm B. Wittenberg, Limbach, Limbach & Sutton, San Francisco, Cal., for appellee.

Paul L. Warner, Horwich & Warner, San Francisco, Cal., for appellant.

Before GOODWIN and HUG, Circuit Judges, and SOLOMON *, District Judge.

GOODWIN, Circuit Judge:

E-Systems, Inc., owner of the registered trademark Montek, sued Monitek, Inc., for injunctive and other relief to protect its mark. Monitek counterclaimed for injunctive relief. After a trial in 1982, both sides appealed, and we remanded the case for clarification of the findings and conclusions. This second appeal is from the resulting judgment which ordered Monitek to abandon the Monitek tradename and to abandon its application for further use of the Monitek trademark. Monitek appeals. We reverse.

I. *Facts*

"Montek" was first used as a name by Montek Associates, Inc., formed in Salt Lake City in 1955. Prior to 1970 the expertise of Montek Associates, Inc. and its corporate successors was in electronics, such as nuclear instrumentation, walkie-talkies, and navigational aids. In June 1971 the Montek group's existing expertise in the electro-mechanical area was supplemented by incorporating into it the automatic controls group of its parent corporation. Using the inherited expertise, E-Systems, Montek's corporate successor, developed a broad and sophisticated line of automatic controls. In 1974, E-Systems decided to seek out novel uses for its newly developed devices, such as in chemical process instrumentation.

---

* The Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation.

Prior to 1970, E-System's predecessor used "Montek" as a tradename and as a trademark on nuclear instrumentation including sensors. While E-System's predecessor also manufactured automatic controls, it did not use the "Montek" name on automatic controls until 1971. E-Systems first applied the "Montek" mark to shock suppressors in the nuclear energy industry in 1975. Only since 1978 has the Montek mark been applied to flow controls.

Defendant Monitek sells sensors for monitoring and controlling fluid flow. Monitek began its corporate life in 1969 as Agriculture Controls Systems, Inc. In 1970 the company changed its name to Monitor Technology, Inc. and adopted the "Monitek" trademark for turbidimeters, devices for detecting turbidity in liquids. It changed its corporate name to Monitek, Inc. in 1977.

In 1974, Monitek acquired a company with a line of sensors for pH and oxidation/reduction potential which was eventually marketed under the Monitek name. In 1977 and 1978, respectively, Monitek added, through acquisition, two new product lines: self-cleaning sensors for waste water treatment and flowmeters, sensors for detecting the rate of flow in a fluid stream. It markets these products under the "Monitek" trademark.

Plaintiff and defendants make some devices that could be used in combination with each other. Sales in the industry are commonly generated through sales representatives who may represent more than one company. Some end users have purchased products of both plaintiff and defendant. Most users of the products buy them because they meet certain narrowly-drawn performance specifications, not because of the name that appears on the housing.

Neither E-Systems nor Monitek had actual knowledge of the other's existence until 1978. Monitek adopted and used its trademark and tradename in good faith, without any actual knowledge of the existence of the "Montek" tradename or trademark or its application to any of E-Systems' products.

E-Systems spent more than $50,000 prior to trial advertising its Montek flow control products, and in 1979 alone sold over $300,000 worth of Montek flow control equipment. Since 1970, Monitek has sold over $10,000,000 in flow control devices. It has invested over $150,000 to advertise its products under the mark "Monitek."

Both parties now advertise in the same magazines and exhibit their products at trade shows for the chemical process industry.

The critical issues at trial were: (1) which party had priority right to use its tradename and trademark; (2) whether laches or other equitable considerations barred relief and, (3) whether the parties' use of their respective names and marks caused a likelihood of confusion. The trier granted E-Systems an injunction based on a finding that E-Systems had priority and that there was likelihood of confusion.

II. *Priority in Tradename and Trademark*

Monitek urges that the magistrate erred in giving E-Systems priority in its tradename and trademark. A prior tradename user does not have to prove direct or market competition with the latecomer in order to establish priority in its tradename. *Stork Restaurant v. Sahati,* 166 F.2d 348, 355 (9th Cir.1948). E-Systems has used the Montek tradename since 1955. Monitek was founded in 1969 and did not change its corporate name to Monitek until 1977. E-Systems therefore has a clear priority in tradename.

Trademark priority in this case presents more complex problems. However, we need not address the issue at this time. E-Systems claims that it desires only a modification of Monitek's tradename practices. E-Systems states in its brief that only the tradename issue is before the court and that Monitek's trademark practices remain unaffected. Taking these statements at face value, we vacate that part of the district court's decision dealing with trademarks.

## III. *Laches*

Laches can bar recovery in trademark or tradename actions where injunctive relief is sought. *Prudential Ins. Co. v. Gibraltar Financial Corp.,* 694 F.2d 1150, 1152 (9th Cir.1982). For laches to constitute a defense, the passage of time must be accompanied by circumstances which estop plaintiff from obtaining injunctive relief. *Carter-Wallace, Inc. v. Procter & Gamble Company,* 434 F.2d 794, 803 n. 4 (9th Cir. 1970). In the years from 1970 on Monitek incurred substantial advertising expenditures and rapidly expanded its business. Because plaintiff and defendant advertised in the same magazines and exhibited at the same trade fairs, plaintiff had ample opportunity to discover defendant's activities before defendant developed a substantial business. When Monitek registered its trademark in 1972, plaintiff had constructive notice of the claim of ownership. 15 U.S.C. § 1072. But plaintiff did not file suit for infringement of either tradename or trademark until 1978. Had defendant's encroachment been minimal, or its growth slow and steady, there would be no laches. *Prudential Ins. Co. v. Gibraltar Financial Corp.,* 694 F.2d at 1154; *Carter-Wallace, Inc. v. Procter & Gamble Company,* 434 F.2d at 803. The facts of this case fail to indicate that defendant's activities fit within either exception.

*Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena,* 293 F.Supp. 892, 917 (S.D.N.Y.1968), *affirmed and modified,* 433 F.2d 686, 703–704 (2d Cir.1970), lists the following among the factors in determining whether laches will bar relief:

1. strength and value of trademark rights asserted;
2. plaintiff's diligence in enforcing mark;
3. harm to senior user if relief denied;
4. good faith ignorance by junior user;
5. competition between senior and junior users; and
6. extent of harm suffered by junior user because of senior user's delay.

On balance, these considerations favor Monitek. The "Monitek" name is unquestionably valuable and strong, given Monitek's rapid and continuing growth. It used the name in good faith ignorance of Montek. It would be inequitable to force Monitek to abandon the name completely in light of the extended period over which Montek could have discovered Monitek's use of its name on its products. Plaintiff ought to have discovered defendant's use sooner had it been diligently seeking to enforce its mark. Although plaintiff's and defendant's products are complementary and are already to some degree competitive, serious harm to the senior user, Montek, is unlikely; in making actual purchases customers who rely on performance specifications are unlikely to confuse the two firms' products.

## IV. *Likelihood of Confusion*

Allowing laches to bar an injunction will have the consequence of allowing both Monitek and E-Systems to continue operating with similar names. As stated by *Saratoga Vichy Spring Co., Inc. v. Lehman,* 491 F.Supp. 141, 155 (N.D.N.Y.1979), the objectives of trademark law are (1) to protect consumers from being misled as to the source of the products, (2) to prevent impairment of the trademark's value to its owner, and (3) to achieve both of the preceding two objectives consistent with free competition.

Maintaining the status quo will protect Monitek's good faith investment in its tradename and trademark and will not harm free competition. A few consumers may be confused about the source of a product. However, as in *Saratoga Vichy Spring* where the court felt that consumers of mineral water were sufficiently sophisticated to distinguish between the two marks of "Saratoga Vichy" and "Saratoga Geyser," most industrial consumers of E-Systems' and Monitek's products are sufficiently sophisticated to distinguish among precision control devices of varying types which must meet demanding technical specifications.

The judgment granting an injunction is reversed and the cause is remanded with instructions to dismiss the action.