**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| PINKETTE CLOTHING, INC., a California corporation, *Plaintiff-Counter-Defendant-Appellee*, | No. 17-55325 D.C. No. 2:15-cv-04950-SJO-AJW |
| v. | |
| COSMETIC WARRIORS LIMITED, believed to be a United Kingdom limited company doing business as Lush Handmade Cosmetics, *Defendant-Counter-Claimant-Appellant.* | OPINION |

Appeal from the United States District Court
for the Central District of California
S. James Otero, District Judge, Presiding

Argued and Submitted April 12, 2018
Pasadena, California

Filed June 29, 2018

Before: John M. Rogers,* Jay S. Bybee,
and Paul J. Watford, Circuit Judges.

Opinion by Judge Bybee

---

* The Honorable John M. Rogers, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

## SUMMARY[**]

### Trademark Infringement

The panel affirmed the district court's judgment in favor of Pinkette Clothing, Inc., which sells LUSH-branded women's fashions, in a case in which Cosmetic Warriors Limited (CWL), which sells LUSH-branded cosmetics and related goods, sought (a) an injunction restraining Pinkette from infringing on CWL's LUSH trademark and (b) the cancellation of Pinkette's registration of its own LUSH trademark.

Distinguishing *Perella v. Metro-Goldwin-Mayer, Inc.*, 134 S. Ct. 1962 (2014) (Copyright Act), and *SCA Hygiene Products v. First Quality Baby Products, LLC*, 137 S. Ct. 954 (2017) (Patent Act), the panel held that laches is available as a defense to CWL's cancellation claim because the Lanham Act has no statute of limitations and expressly makes laches a defense to cancellation.

The panel held that the district court applied the correct standard when it applied the factors set forth in *E-Sys., Inc. v. Monitek, Inc.*, 720 F.2d 604 (9th Cir. 1983), to CWL's claim for injunctive relief. The panel wrote that analysis of the *E-Systems* factors validates the strong presumption in favor of laches created by CWL's delaying past the expiration of the most analogous state statute of limitations. The panel concluded that the district court did not abuse its discretion in

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

applying laches to bar CWL's cancellation and infringement claims.

The panel held that the district court did not abuse its discretion in declining to apply the doctrine of unclean hands to preclude Pinkette from asserting laches, and that the inevitable confusion doctrine is inapplicable. The panel also held that evidence of Pinkette's LUSH mark in Canada was not relevant to the infringement-related questions for which the jury was the sole trier of fact, and that any error in excluding the disputed evidence from the jury's hearing was harmless because CWL was allowed to present all of its evidence to the district court after the jury was dismissed.

Rejecting CWL's argument that the words "other than clothing" in the district court's judgment is inconsistent with the jury's verdict and in error, the panel concluded that the judgment, read as a whole, accurately reflects the court's disposition of the case.

---

## COUNSEL

Rachel Zimmerman Scobie (argued), Ian G. McFarland, Heather J. Kliebenstein, and John A. Clifford, Merchant & Gould P.C., Minneapolis, Minnesota, for Defendant-Counter-Claimant-Appellant.

Kevin M. Bringuel (argued), Sarah Silverton, David Crane, Tiffany Hansen, Enoch Liang, and James Lee, LTL Attorneys LLP, South San Francisco, California, for Plaintiff-Counter-Defendant-Appellee.

---

**OPINION**

BYBEE, Circuit Judge:

Cosmetic Warriors Limited ("CWL") sells LUSH-branded cosmetics and related goods, while Pinkette Clothing sells LUSH-branded women's fashions. CWL seeks both a permanent injunction restraining Pinkette from infringing on CWL's LUSH mark and cancellation of Pinkette's registration of its own LUSH mark. The district court held that laches barred CWL's infringement and cancellation claims and accordingly entered judgment for Pinkette.

The Lanham Act recognizes laches as a defense to a petition for cancellation of a trademark registration. 15 U.S.C. § 1069. Although such a petition may be filed "[a]t any time," § 1064 limits the grounds for cancellation after five years have passed from the date of registration—i.e., after the mark becomes incontestable. *Id.* § 1064. Relying on *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962 (2014), and *SCA Hygiene Products v. First Quality Baby Products, LLC*, 137 S. Ct. 954 (2017), CWL argues that laches *cannot* bar a cancellation claim if it is brought within the five-year period specified in § 1064.

We write principally to address what effect, if any, *Petrella* and *SCA Hygiene* had on applying laches to a trademark cancellation claim. In *Petrella*, the Supreme Court held that laches could not bar a copyright infringement claim brought within the Copyright Act's three-year statute of limitations. 134 S. Ct. at 1967. And in *SCA Hygiene*, the Court held that laches could not bar a patent infringement claim brought within the Patent Act's six-year statute of limitations. 137 S. Ct. at 959. We conclude that the principle

at work in these cases—a concern over laches overriding a statute of limitations—does not apply here, where the Lanham Act has no statute of limitations and expressly makes laches a defense to cancellation.  As CWL's other arguments on appeal are also without merit, we affirm the judgment of the district court.

## I.  BACKGROUND

A. *CWL's Use of the LUSH Mark on Cosmetics and Related Goods*

In the mid-1990s, CWL began selling cosmetics through a mail-order catalogue and brick-and-mortar retail store located in the United Kingdom.  The first edition of its catalogue was titled "Cosmetic House" but asked customers to submit suggestions for a new name.  One customer recommended "Lush."  CWL adopted the name and began selling a variety of products under the LUSH mark, including makeup, bath and body products, spa treatments, and fragrances.  The first LUSH retail store in Canada opened in 1996, and the first such store in the United States opened in 2002.  Today, CWL has about 940 LUSH retail stores in 49 different countries.

From the beginning, LUSH retail staff wore LUSH-branded aprons.  There is no evidence, however, of CWL's making any clothing sales to end consumers in the United States until at least 2004. Between 2004 and 2013, CWL sold fewer than 1,000 LUSH-branded t-shirts, tank tops, or sweatshirts in the United States.  It appears these sales were part of the company's promotional "swag program," and it is not clear how many of the sales were to end consumers rather than employees.

CWL has multiple trademark registrations in the United States, including registrations for use of LUSH on perfumes and hair services and for use of LUSH TIMES on publications. Though CWL has never had a registration in the United States for use of LUSH on clothing, it did have such a registration in Canada (specifically, for use on t-shirts) until recently. The Canadian registration was filed in 2002, but was later cancelled on the grounds that CWL's sales of t-shirts at cost for promotional purposes did not qualify for trademark protection.

CWL actively polices the LUSH mark, and its log of trademark-enforcement matters reflects over 130 such disputes. CWL has investigated, for example, Lush Day Spa Salon in Minnesota in 2012; Lush Salon & Day Spa in Tennessee in 2013; and Lush Aveda Salon and Spa in Illinois in 2014. CWL has also successfully opposed the registration of numerous marks, such as LUSH BERRY, LUSHPOP, and HYDRA LUSH. And CWL has filed a number of infringement actions. *See, e.g.*, *Cosmetic Warriors Ltd. v. Nailush LLC*, No. 17-1475, 2017 WL 5157390, at *1 (D.N.J. Nov. 6, 2017); *Cosmetic Warriors Ltd. v. Lush Boutique, L.L.C.*, No. 09-6381, 2010 WL 481229, at *1 (E.D. La. Feb. 1, 2010).

B.  *Pinkette's Use of the LUSH Mark on Clothing*

In 2003—after CWL had already entered the United States—Edward Kim, his sister Erica Kim, and their cousin Daniel Kim started Pinkette Clothing, a company that sells young women's clothing under different labels. One of those labels is LUSH. The Kims testified that they brainstormed the name together by picking words out of a dictionary, ultimately deciding on the adjective "lush" because it

described what their brand "aspire[d] to be," namely, "appealing, attractive, prosperous, and abundant."

After landing on the LUSH name, the Kims began researching internet domain names, and in the process, discovered that CWL sold LUSH-branded cosmetics at lush.com. They checked whether CWL sold clothing on its website, determined that it did not, and ultimately selected lushclothing.com as Pinkette's domain name. From September 2003 onward, Pinkette has sold women's clothing under the LUSH mark to retailers in the United States and Canada—principally to Nordstrom but also to retailers such as TJ Maxx and Bloomingdale's.

In May 2009, Pinkette filed a trademark registration application for use of LUSH on clothing in the United States. The application was published for opposition in the Trademark Official Gazette. A trademark watch service notified CWL's outside counsel of the application, but CWL claims that it did not become aware of Pinkette's use of the LUSH mark, much less its trademark application, until years later. There was no opposition to Pinkette's application, and Pinkette's LUSH mark was registered in July 2010, thereby putting CWL on constructive notice of Pinkette's claim to ownership. *See* 15 U.S.C. § 1072 ("Registration of a mark on the principal register . . . shall be constructive notice of the registrant's claim of ownership thereof.").

In August 2010, Pinkette filed a trademark registration application for use of LUSH on clothing in Canada. That application was rejected in December 2010 for being confusingly similar to CWL's LUSH mark. Four years later, Pinkette began an anonymous cancellation proceeding against CWL's Canadian registration for use of LUSH on t-shirts. As

noted above, that action was successful in 2017—though it remains on appeal in Canada.

## C. *Procedural History*

CWL claims it had no actual knowledge of Pinkette's use of the LUSH mark until late 2014. In December 2014, CWL filed a trademark registration application for use of LUSH on clothing in the United States, which was rejected on account of Pinkette's preexisting registration. It was not until June 2015—approximately four years and eleven months after Pinkette's registration issued—that CWL finally filed a petition with the Trademark Trial and Appeal Board ("TTAB") to cancel Pinkette's registration.

After CWL filed its cancellation petition, Pinkette filed this action in federal court, seeking a declaratory judgment that it did not infringe on CWL's trademark rights, or alternatively that laches bars CWL from asserting its rights against Pinkette. CWL counterclaimed for trademark infringement and cancellation of Pinkette's registration, among other claims. On the parties' joint motion, proceedings before the TTAB were stayed pending resolution of this case.

The district court determined that a jury would decide CWL's infringement and cancellation claims and serve in an advisory capacity as to Pinkette's laches defense, which would be decided by the court. Pinkette moved in limine to exclude from the jury any reference to its Canadian trademark registration application and cancellation petition. CWL opposed, arguing that Pinkette's actions in Canada demonstrated its knowledge of the likelihood of confusion between the two companies' marks and, hence, its bad faith

in continuing to use the LUSH mark in the United States. The district court granted Pinkette's motion but allowed CWL to present the disputed evidence to the court after the jury was dismissed.

Following a five-day trial, the jury returned a special verdict finding for CWL on its infringement and cancellation claims but finding (in an advisory capacity) for Pinkette on its laches defense.   The parties then presented additional evidence regarding laches, at the conclusion of which the court rendered an oral decision holding that laches barred CWL's claims.  Nevertheless, CWL moved for judgment in its favor, requesting a permanent injunction prohibiting Pinkette from using the LUSH mark and an order directing the TTAB to cancel Pinkette's registration.  The district court denied CWL's motion in a written decision and entered judgment for Pinkette on all claims.  CWL timely appealed.

## II.  ANALYSIS

CWL raises four issues before us.  First, was laches a proper defense where CWL brought its cancellation claim within the five-year period specified in 15 U.S.C. § 1064(1)? Second, assuming laches could be asserted, did the district court properly apply laches to CWL's cancellation and infringement claims?  Third, did the district court abuse its discretion when it excluded reference to Pinkette's Canadian trademark application from the jury?  Fourth, did the district court properly limit CWL's trademark to cosmetics and goods other than clothing?  We address each question in turn.

A. *Availability of Laches as a Defense to CWL's Cancellation Claim*

The Lanham Act, 15 U.S.C. § 1051 *et seq.*, provides for the registration of trademarks. *Id.* § 1052. The owner of a registered mark is entitled to a presumption that the mark is valid, *id.* § 1057(b), and after five years, the registered mark ordinarily becomes incontestable, *id.* § 1065. The right to the mark, however, is subject to "equitable principles, including laches, estoppel, and acquiescence." *Id.* § 1115(b)(9); *see also id.* § 1069 ("In all inter partes proceedings equitable principles of laches, estoppel, and acquiescence, where applicable may be considered and applied.").

The Lanham Act also authorizes "any person who believes that he is or will be damaged . . . by the registration of a mark" to petition to cancel the registration.[1] *Id.* § 1064. If a petition for cancellation is brought before the mark becomes incontestable, "any ground that would have prevented registration in the first place qualifies as a valid ground for cancellation," including that there exists a "likelihood of confusion between the mark sought to be canceled and a mark for which the party seeking cancellation can establish either prior use or prior registration." *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 946 (Fed. Cir. 2000); *see also* 15 U.S.C. §§ 1052(d), 1064; J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 20:53 (5th ed.) ("MCCARTHY"). Here, the jury found a likelihood of confusion between the parties'

---

[1] Petitions for cancellation are typically heard by the TTAB. But where, as here, an action brought in federal court involves a registered mark, the district court may order cancellation of the registration. 15 U.S.C. § 1119.

marks, and absent Pinkette's laches defense, CWL would have been entitled to judgment in its favor on its cancellation claim.

The Supreme Court has held that laches is not available as a defense to claims for copyright or patent infringement brought within the limitations periods prescribed under the Copyright and Patent Acts. *SCA Hygiene Prods. v. First Quality Baby Prod., LLC*, 137 S. Ct. 954, 959 (2017) (Patent Act); *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1967 (2014) (Copyright Act). CWL argues that, because it filed its cancellation petition with the TTAB before Pinkette's trademark registration became incontestable under 15 U.S.C. § 1064, laches is not available as a defense to its cancellation claim and that the district court therefore erred in applying laches here.[2]

We begin with a brief overview of the relevant decisions. In *Petrella*, Frank Petrella owned the copyright to a screenplay used in MGM's Academy Award-winning film *Raging Bull.* 134 S. Ct. at 1971. Frank registered the copyright to the screenplay in 1963, and his daughter and heir, Paula Petrella, renewed the registration in 1991. *Id.* at 1970–72. Seven years later, Paula informed MGM of her belief that its exploitation of *Raging Bull* infringed on her copyright. *Id.* at 1972. Another eleven years after that, she filed her copyright infringement suit. *Id.* She acknowledged the applicable three-year statute of limitations and sought relief only for acts of infringement that occurred during the

---

[2] We review whether laches is available as a potential defense in a particular action de novo, and we review the district court's application of laches for abuse of discretion. *In re Beaty*, 306 F.3d 914, 920–21 (9th Cir. 2002).

three years prior to her suit.  *Id.*  The district court, however, granted summary judgment for MGM based on laches.  *Id.*

The Supreme Court explained that, because federal copyright law did not originally include a statute of limitations for civil suits, federal courts used to rely on analogous state statutes of limitations to determine the timeliness of federal infringement claims and sometimes invoked laches to abridge the state law prescription.  *Id.* at 1968.  This practice accorded with the general rule that "[w]hen Congress fails to enact a statute of limitations, a [federal] court that borrows a state statute of limitations but permits it to be abridged by the doctrine of laches is . . . merely filling a legislative hole."  *Id.*

Eventually, however, Congress filled the gap it had previously left open by enacting a three-year statute of limitations for copyright infringement.  The Copyright Act now states: "No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued."  17 U.S.C. § 507(b).  When combined with the "separate-accrual rule"—under which the statute of limitations runs separately for each successive act of infringement—the effect of § 507(b) is that a copyright infringement "is actionable within three years, and only three years, of its occurrence" and "the infringer is insulated from liability for earlier infringements of the same work."  *Petrella*, 134 S. Ct. at 1969–70.

The Court held that laches could not bar Petrella's copyright infringement claim for acts of infringement within the last three years, noting that it had "never applied laches to bar in their entirety claims for discrete wrongs occurring within a federally prescribed limitations period."  *Id.* at 1975.

The Court reasoned that this result was necessary to protect the regime put in place through the combination of § 507(b) and the separate-accrual rule. *Id.* at 1978. Notably, the Court differentiated between the Copyright Act and the Lanham Act: "In contrast to the Copyright Act, the Lanham Act, which governs trademarks, contains no statute of limitations, and expressly provides for defensive use of 'equitable principles, including laches.'" *Id.* at 1974 n.15 (quoting 15 U.S.C. § 1115(b)(9)).

In *SCA Hygiene*, SCA Hygiene Products and First Quality Baby Products disputed the validity of SCA's patent on an adult diaper. 137 S. Ct. at 959. The two parties corresponded on the subject in 2004. *Id.* Later the same year, without notifying First Quality, SCA asked the Patent and Trademark Office ("PTO") to reexamine the validity of its patent in light of First Quality's patent. *Id.* The PTO did so and confirmed the validity of SCA's patent in 2007. *Id.* SCA nevertheless waited until 2010 to file its patent infringement suit against First Quality. *Id.* The district court granted summary judgment for First Quality based on laches. *Id.*

On appeal, the Supreme Court elaborated on its reasoning in *Petrella*, which rested on "separation-of-powers principles" and "the traditional role of laches in equity." *Id.* at 960. With respect to the former: "When Congress enacts a statute of limitations, it speaks directly to the issue of timeliness and provides a rule for determining whether a claim is timely enough to permit relief. . . . [A]pplying laches within a limitations period specified by Congress would give judges a 'legislation-overriding' role that is beyond the Judiciary's power." *Id.* With respect to the latter: "Laches is a gap-filling doctrine, and where there is a statute of limitations, there is no gap to fill." *Id.* at 961.

Applying *Petrella*, the Supreme Court held that laches did not bar SCA's patent infringement claim brought within the Patent Act's six-year statute of limitations. *Id.* at 959, 963. The Patent Act states: "Except as otherwise provided by law, no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action." 35 U.S.C. § 286. Similar to the Copyright Act's three-year statute of limitations, the Patent Act's six-year statute of limitations "represents a judgment by Congress that a patentee may recover damages for any infringement committed within six years of the filing of the claim." *SCA Hygiene*, 137 S. Ct. at 961. In short, the Patent Act's statute of limitations leaves no gap for laches to fill.

CWL does not argue that *Petrella* and *SCA Hygiene* preclude application of laches to its trademark *infringement* claim—presumably because the Lanham Act prescribes no statute of limitations for such a claim. *See Petrella*, 134 S. Ct. at 1974 n.15. Instead, CWL only argues that those cases preclude application of laches to its *cancellation* claim because it filed that claim before Pinkette's mark became incontestable. Thus, from the outset, CWL's argument presents an asymmetry found in neither *Petrella* nor *SCA Hygiene*: CWL would have us hold that, even where prejudicial delay otherwise precludes one party from enforcing its trademark rights against another party, the first party may still have the second party's registration stricken from the register. This is not the result required by either the Lanham Act or the Supreme Court's decisions.

"Unlike both Copyright law and Patent law, each of which has its own federal statute of limitations, the federal Lanham Act has no statute of limitations." MCCARTHY

§ 31:33.  Rather, the Lanham Act vests courts with the power to grant relief according "to the principles of equity." 15 U.S.C. §§ 1116, 1117.  Moreover, § 1069 expressly makes laches a potential defense "[i]n *all* inter partes proceedings" before the PTO, including cancellation proceedings. 15 U.S.C. § 1069 (emphasis added); *see also* McCarthy § 20:74.  Importantly, § 1069 makes no distinction between proceedings against contestable versus incontestable marks.

Nothing in § 1064 alters the straightforward application of § 1069 to permit laches as a defense to cancellation.  There is no question that § 1064 is not a statute of limitations in the usual sense of barring an action entirely once a defined period expires.  Incontestability merely limits the grounds on which cancellation may be sought.  A petition brought within five years of registration (against a contestable mark) may assert any ground that would have prevented registration in the first place—most commonly that the registered mark creates a likelihood of confusion with the petitioner's preexisting mark.  15 U.S.C. § 1064.  By contrast, a petition brought five years after registration (against an incontestable mark) may only assert one of several enumerated grounds for cancellation, including genericism, functionality, abandonment, or fraudulent procurement.  *Id.*

Moreover, § 1064 does not implicate the same concerns identified in *Petrella* and *SCA Hygiene*.  The statutes of limitations at issue in those cases state categorically that "[n]o civil action shall be maintained," 17 U.S.C. § 507(b), or "no recovery shall be had," 35 U.S.C. § 286.  Such language represents a clear directive from Congress and leaves no gap for laches to fill.  The Lanham Act, on the other hand, provides that a petition for cancellation may be brought "[a]t any time" but affords different grounds for cancellation

depending on whether the petition is brought within five years of registration.**[3]** 15 U.S.C. § 1064. Applying laches to a cancellation claim against a contestable mark neither overrides a clear directive from Congress nor fills a gap where there is none to fill. *See SCA Hygiene*, 137 S. Ct. at 960–61.

Finally, although *Petrella* and *SCA Hygiene* are recent decisions, the idea that laches will not bar a claim for legal relief brought within the applicable statute of limitations is not. *See, e.g.*, *United States v. Mack*, 295 U.S. 480, 489 (1935) ("Laches within the term of the statute of limitations is no defense at law."); *Wehrman v. Conklin*, 155 U.S. 314, 326 (1894) ("Though a good defense in equity, laches is no defense at law. If the plaintiff at law has brought his action within the period fixed by the statute of limitations, no court can deprive him of his right to proceed."); *Cross v. Allen*,

---

**[3]** The Third Circuit has interpreted § 1064's "[a]t any time" language to mean that laches cannot bar a cancellation claim based on any of the enumerated grounds for cancelling an *incontestable* mark. *Marshak v. Treadwell*, 240 F.3d 184, 193 (3d Cir. 2001) (holding that laches could not bar cancellation claim brought *more* than five years after registration). Other courts have reached the opposite conclusion, reasoning that "[t]he words '[a]t any time' demonstrate only that the act imposes no statute of limitations" and "have nothing to do with what equitable defenses may be available." *Pro-Football, Inc. v. Harjo*, 415 F.3d 44, 48 (D.C. Cir. 2005) (permitting laches as a defense to cancellation claim brought more than five years after registration); *accord Bridgestone/Firestone Research, Inc. v. Auto. Club de L'Ouest de la France*, 245 F.3d 1359, 1360 (Fed. Cir. 2001) (same). Interestingly, combining the Third Circuit's rule with CWL's argument here would result in laches *never* being a defense in cancellation proceedings—a party could neither assert laches before a mark becomes incontestable nor after. Such a result would run contrary to the Lanham Act's prescription of laches as a defense in "[i]n all inter partes proceedings." 15 U.S.C. § 1069.

141 U.S. 528, 537 (1891) ("So long as the demands secured were not barred by the statute of limitations, there could be no laches in prosecuting a suit."). Indeed, the Supreme Court itself suggested that *Petrella* and *SCA Hygiene* merely "confirmed and restated" a "long-standing rule."[4] *SCA Hygiene*, 137 S. Ct. at 963.

Notwithstanding the long pedigree of the rule in *Petrella* and *SCA Hygiene*, the TTAB has repeatedly reached the same conclusion we do today and applied laches to bar trademark cancellation claims brought within five years of the relevant registration. *See, e.g.*, *Ava Ruha Corp. v. Mother's Nutritional Ctr., Inc.*, 113 U.S.P.Q.2d 1575 (T.T.A.B. 2015) (applying laches where respondent's registration issued in June 2009 and petitioner filed petition for cancellation in August 2012).[5] Similarly, a leading trademark treatise

---

[4] To say this is a "long-standing rule" is not to say it has been universally applied. *See, e.g.*, *In re Beaty*, 306 F.3d at 925 (noting that "a claim may be barred by laches even if the statute of limitations for the claim has not expired," and collecting cases).

[5] *See also The Christian Broad. Network, Inc. v. ABS-CBN Int'l*, 84 U.S.P.Q.2d 1560 (T.T.A.B. 2007) (applying laches where respondent's registration issued on March 28, 2000 and petitioner filed petition for cancellation on March 24, 2005); *Teledyne Techs., Inc. v. W. Skyways, Inc.*, 78 U.S.P.Q.2d 1203 (T.T.A.B. 2006), *aff'd*, 208 Fed. App'x 886 (Fed. Cir. 2006) (applying laches where respondent's registration issued in March 1999 and petitioner filed petition for cancellation in October 2002); *Turner v. Hops Grill & Bar, Inc.*, 52 U.S.P.Q.2d 1310 (T.T.A.B. 1999) (applying laches where respondent's registrations issued in September 1992 and December 1995 and petitioner filed petition for cancellation in August 1997). There are also instances where the TTAB or courts have declined to apply laches to cancellation claims brought within five years of registration. *See, e.g.*, *Charrette Corp. v. Bowater Comm'n Papers Inc.*, 13 U.S.P.Q.2d 2040 (T.T.A.B. 1989). But these cases declined to apply laches because of insufficient delay or prejudice.

suggests that laches is available as a defense in cancellation cases initiated "within the first five years of registration." MCCARTHY § 20:76. For all of these reasons, laches is available as a defense to CWL's cancellation claim, and the district court did not err in considering laches as a defense in this case.

B. *Application of Laches to CWL's Cancellation and Infringement Claims*

"We analyze the laches defense with a two-step process." *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 878 (9th Cir. 2014). First, we assess the plaintiff's delay by looking to whether the most analogous state statute of limitations has expired. *Id.* If the most analogous state statute of limitations expired before suit was filed, there is a strong presumption in favor of laches. *Id.* That presumption is reversed, however, if the most analogous state statute of limitations expired after suit was filed. *Id.*

Second, we assess the equity of applying laches using the *E-Systems* factors: (1) "strength and value of trademark rights asserted;" (2) "plaintiff's diligence in enforcing mark;" (3) "harm to senior user if relief denied;" (4) "good faith ignorance by junior user;" (5) "competition between senior and junior users;" and (6) "extent of harm suffered by junior user because of senior user's delay." *E-Sys., Inc. v. Monitek, Inc.*, 720 F.2d 604, 607 (9th Cir. 1983). We review a district court's application of laches for abuse of discretion. *In re Beaty*, 306 F.3d 914, 921 (9th Cir. 2002). "An abuse of discretion occurs if the district court bases its decision on an

---

*See, e.g.*, *id.* We are unaware of any case declining to apply laches to a cancellation claim merely because the mark remained contestable.

erroneous legal standard or on clearly erroneous findings of facts." *Grupo Gigante SA de CV v. Dallo & Co.*, 391 F.3d 1088, 1101 (9th Cir. 2004).

The most analogous state statute of limitations in this case is California's four-year statute of limitations for trademark infringement actions. *See Internet Specialties W., Inc. v. Milon-DiGiorgio Enters., Inc.*, 559 F.3d 985, 990 n.2 (9th Cir. 2009). Laches runs "from the time the plaintiff knew or should have known about its potential cause of action." *Tillamook Country Smoker, Inc. v. Tillamook Cty. Creamery Ass'n*, 465 F.3d 1102, 1108 (9th Cir. 2006). CWL should have known about its claims no later than when Pinkette's registration issued in July 2010. *See E-Sys.*, 720 F.2d at 607 (applying laches where "Monitek registered its trademark in 1972," "[b]ut plaintiff did not file suit for infringement . . . until 1978"). Yet CWL did not file its cancellation petition until nearly five years later in June 2015. Because CWL delayed beyond the expiration of the most analogous state statute of limitations, a strong presumption in favor of laches arises. *See La Quinta Worldwide*, 762 F.3d at 878.

On appeal, CWL does not dispute this conclusion, but rather focuses on the second step of our inquiry—whether in light of the *E-Systems* factors equity favors applying laches. In this respect, CWL argues that: (1) the district court applied the wrong legal standard in applying laches to a claim for injunctive relief; and (2) even if the district court applied the correct standard, it misweighed the *E-Systems* factors. In addition, CWL argues that: (3) unclean hands bars Pinkette's laches defense; and (4) the inevitable confusion doctrine bars Pinkette's laches defense as well. We address each argument in turn.

1.  The district court applied the correct standard.

CWL first argues that, by applying *E-Systems* and its progeny to a claim for injunctive relief, the district court applied the wrong legal standard and therefore abused its discretion. *See Grupo*, 391 F.3d at 1101 ("An abuse of discretion occurs if the district court bases its decision on an erroneous legal standard . . . ."). According to CWL, the Supreme Court articulated a heightened standard for applying laches to claims for injunctive (as opposed to monetary) relief in *McLean v. Fleming*, 96 U.S. 245 (1877), and *Menendez v. Holt*, 128 U.S. 514 (1888); we recognized that heightened standard in *Stork Restaurant v. Sahati*, 166 F.2d 348, 363 (9th Cir. 1948); and all our cases since *Stork Restaurant*— including *E-Systems* and its progeny—erred insofar as they failed to apply the heightened standard.

We disagree with CWL's premise and thus cannot agree with its conclusion. In 1877, the Supreme Court held that laches barred a plaintiff's claim for monetary relief for trademark infringement but nevertheless affirmed entry of a permanent injunction restraining the defendant's future use of the mark. *McLean*, 96 U.S. at 258. Eleven years later, the Supreme Court cited *McLean* for the proposition that "even though a complainant were guilty of such delay in seeking relief upon infringement as to preclude him from obtaining an account of gains and profits, yet, if he were otherwise so entitled, an injunction against future infringement *might* properly be awarded." *Menendez*, 128 U.S. at 523–25 (emphasis added) (holding that, although the plaintiff had delayed in bringing suit, "there was neither conduct nor negligence which could be held to destroy the right to prevention of further injury"). Next, in 1948, we cited *McLean* and *Menendez* in refusing to apply laches to a

particular claim for injunctive relief.  *Stork Restaurant*, 166 F.2d at 362–63 & n.18 ("[I]n a case of this type laches is no defense. . . .  Laches or delay must be accompanied by circumstances amounting to an abandonment or an estoppel before it constitutes any defense.").

We previously addressed *Menendez*, *McLean*, and *Stork Restaurant* and concluded that they do not create a heightened standard for applying laches to a claim for injunctive relief.  In *Prudential Insurance Company of America v. Gibraltar Financial Corporation of California*, 694 F.2d 1150, 1152 (9th Cir. 1982), we addressed whether "laches may preclude damages, but cannot bar injunctive relief."  Examining *Menendez*, *McLean*, and *Stork Restaurant*, we held that "[t]hese cases do not support the proposition" and cited other cases in which the Supreme Court "made laches available as an equitable defense barring injunctive relief."  *Id.* (citing *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 102–03 (1918); *La Republique Francaise v. Saratoga Vichy Spring Co.*, 191 U.S. 427, 436–37 (1903)).  We specifically stated that our opinion in *Stork Restaurant* had "found no laches based on the facts" and had only "stated in dicta that laches could not bar injunctive relief," such that "*Stork Restaurant* should be read for the limited proposition that the defense of laches was not made out in that case."  *Id.*

We have since observed that "laches typically does not bar prospective injunctive relief.  However, the rule is not . . . an absolute one."  *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 959 (9th Cir. 2001).  We have thus followed *Prudential Insurance* and considered laches in a number of cases in which an injunction was sought.  *See, e.g.*, *Tillamook Country Smoker*, 465 F.3d at 1108 (applying laches to a claim for an

injunction); *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 997 (9th Cir. 2006) ("It is well established that laches is a valid defense to Lanham Act claims for both monetary damages and injunctive relief."); *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 840 (9th Cir. 2002) (applying laches to a claim for an injunction); *Danjaq*, 263 F.3d at 960 ("In a situation like this one, laches may bar prospective injunctive relief."); *E-Sys.*, 720 F.2d at 607 ("Laches can bar recovery in trademark or tradename actions where injunctive relief is sought.").

We repeat what we have said in these cases: in each case, the district court must weigh the plaintiff's delay and the resulting prejudice to the defendant to determine whether and to what extent laches bars the requested relief, including a request for an injunction. It is precisely these elements of delay and prejudice that the *E-Systems* factors are meant to identify. 720 F.2d at 607 ("For laches to constitute a defense, the passage of time must be accompanied by circumstances which estop plaintiff from obtaining injunctive relief."). We therefore turn to the district court's application of those factors in this case.

2.  The district court did not abuse its discretion in weighing the *E-Systems* factors.

The district court found that at least the second, third, fourth, and sixth factors favored laches—i.e., that CWL was not diligent in enforcing its mark; that CWL would not suffer harm if the injunction was denied; that Pinkette acted in good faith; and that Pinkette was harmed by CWL's delay. Based on these findings, it concluded that, "the *E-Systems* factors weigh in favor of a finding of laches." This was not an abuse of discretion.

The first factor is the "strength and value of [the] trademark rights asserted." *E-Sys.*, 720 F.2d at 607. Pinkette does not dispute that CWL's LUSH mark is strong and valuable, and this factor therefore weighs against applying laches. The second factor—the "plaintiff's diligence in enforcing [the] mark"—cuts in the opposite direction. *Id.* Pinkette's trademark registration put CWL on constructive notice of Pinkette's claim to ownership of the LUSH mark in July 2010. Even though CWL's outside counsel received notice of Pinkette's registration application, and even though CWL otherwise strictly polices its mark, CWL waited until June 2015 to file its petition for cancellation. *See, e.g.*, *Grupo*, 391 F.3d at 1102 (four-year delay sufficient for laches defense); *Fitbug Ltd. v. Fitbit, Inc.*, 78 F. Supp. 3d 1180, 1193 (N.D. Cal. 2015) (same).

The third factor—the "harm to [the] senior user if relief [is] denied"—does not weigh strongly in either one direction or the other. *E-Sys.*, 720 F.3d at 607. On the one hand, we recognize that the lack of a permanent injunction restraining Pinkette's use of the mark harms CWL by diminishing its control over its brand. CWL markets itself as a socially-conscious and environmentally-friendly company, and Pinkette's infringing use undermines CWL's control over that message. On the other hand, the two companies successfully coexisted from Pinkette's founding in 2003 until late 2014. *Cf. Grupo*, 391 F.3d at 1104 ("[D]elay weakens a claim of likelihood of confusion, because the public may learn to distinguish between similar marks over time, so that any real likelihood of confusion gradually dissipates."). Moreover, CWL abandoned its claim for actual damages before trial and instead sought disgorgement of Pinkette's profits. Although the jury found for CWL on infringement, it also found that none of Pinkette's profits were attributable to infringement

and awarded zero damages.  On the whole, the third factor is either neutral or only weakly favors applying laches.

The fourth factor is "good faith ignorance by [the] junior user." *E-Sys.*, 720 F.2d at 607.  The district court found that "[t]here was no indication that Pinkette was ever trying to hide its use of the mark; it was open and notorious."  The Kims testified that they brainstormed the LUSH name independently from CWL, and the district court found their testimony "very credible."  In response, CWL points to the Kims' discovery of the internet domain name lush.com in 2003 and Pinkette's unsuccessful Canadian trademark registration application in August 2010.  But the Kims testified that they believed their use of the mark on clothing would not infringe on CWL's trademark rights, and the rejection of their Canadian application would not have given them reason to doubt the validity of their registration in the United States.  *See Grupo*, 391 F.3d at 1092 ("[U]nder the 'territoriality principle,' use of a mark in another country generally does not serve to give the user trademark rights in the United States.").  Perhaps most importantly, there is no evidence that Pinkette ever sought to free-ride on CWL's good will or otherwise take unfair advantage of the similarity between the two companies' marks.  Pinkette's good faith thus weighs in favor of laches.

The fifth factor—"competition between senior and junior users"—also weighs in favor of laches.  *E-Sys.*, 720 F.2d at 607.  There is no evidence that CWL and Pinkette have ever competed with each other; indeed, CWL claims it did not even know that Pinkette's LUSH label existed between 2003 and late 2014, even though LUSH clothing was sold in major American retail stores.  CWL has sold a relatively small number of LUSH-branded t-shirts, tank tops, and sweatshirts,

but it appears these clothing items were sold only for promotional purposes, and they bear little relation to Pinkette's high-end, women's fashions.

The sixth and final factor is the "extent of harm suffered by [the] junior user because of [the] senior user's delay." *E-Sys.*, 720 F.2d at 607. Between July 2010 when CWL was put on constructive notice and June 2015 when CWL petitioned to cancel Pinkette's registration, Pinkette continued to invest in its LUSH label. The district court found that, during this time, "Pinkette built its business by pursuing trade shows and advertising;" "[i]t committed to significant expansion of its warehouse;" and "[i]t committed to a significant expansion of its employment base." We have held that "a defendant can make the required showing of prejudice by proving that it has continued to build a valuable business around its trademark during the time that the plaintiff delayed the exercise of its legal rights." *Grupo*, 391 F.3d at 1105; *see also Whittaker Corp. v. Execuair Corp.*, 736 F.2d 1341, 1347 (9th Cir. 1984) (defendant's investments in parts and inventory to expand its existing business was evidence of prejudice for purposes of laches). The final factor therefore weighs in favor of laches.

In sum, analysis of the *E-Systems* factors validates the strong presumption in favor of laches created by CWL's delaying past the expiration of the most analogous state statute of limitations. At least four, and possibly five, of the factors support a finding of laches. The district court did not abuse its discretion in applying laches to bar CWL's cancellation and infringement claims.

3. The district court did not abuse its discretion in declining to apply the doctrine of unclean hands.

CWL contends that the doctrine of unclean hands precludes Pinkette from asserting laches. "A party with unclean hands may not assert laches." *Jarrow Formulas*, 304 F.3d at 841. "[O]nly a showing of wrongfulness, willfulness, bad faith, or gross negligence, proved by clear and convincing evidence, will establish sufficient culpability for invocation of the doctrine of unclean hands." *Pfizer, Inc. v. Int'l Rectifier Corp.*, 685 F.2d 357, 359 (9th Cir. 1982). The district court declined to apply unclean hands here. We review this holding for abuse of discretion. *See TransWorld Airlines, Inc. v. Am. Coupon Exch., Inc.*, 913 F.2d 676, 694 (9th Cir. 1990).

CWL's argument in this regard parallels its argument on the "good faith" *E-Systems* factor: it argues that Pinkette acted in bad faith because its founders knew of CWL's LUSH mark in 2003 and learned there was a likelihood of confusion between the two companies' marks when their Canadian trademark registration application was rejected in 2010. For the same reasons explained above, there was no clear and convincing evidence of wrongfulness, willfulness, bad faith, or gross negligence on Pinkette's part. *See Pfizer*, 685 F.2d at 359; *see also GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) (a party's hands need not be "clean as snow" to avoid the unclean hands doctrine). The district court did not abuse its discretion by declining to apply the doctrine of unclean hands.

4.   The inevitable confusion doctrine is inapplicable.

"If it is inevitable that a significant amount of confusion will probably be created by the junior user's actions, then the right of the public not to be confused and deceived may outweigh the inequity to the junior user of the trademark owner's delay in suing [and defeat a defense of laches]." MCCARTHY § 31:10.  That said, "the danger of 'inevitable confusion' between products will defeat a successful laches defense only in a narrow set of circumstances." *Tillamook Country Smoker*, 465 F.3d at 1111.  "[I]n order to ensure that laches remains a viable defense to Lanham Act claims, the public's interest will trump laches only when the suit concerns allegations that the product is harmful or otherwise a threat to public safety and well being." *Id.*  There is no evidence that Pinkette's clothing is harmful or otherwise a threat to public safety and well being, and the doctrine of inevitable confusion is therefore inapplicable.

C. *Evidence of the LUSH Mark in Canada*

Pinkette moved in limine to exclude reference to its Canadian trademark registration application and anonymous cancellation petition from the jury's hearing.  The district court granted Pinkette's motion but allowed CWL to present the disputed evidence after the jury was dismissed.  CWL challenges this evidentiary ruling on appeal.  "We review the district court's evidentiary rulings for abuse of discretion." *Draper v. Rosario*, 836 F.3d 1072, 1080 (9th Cir. 2016).

Evidence of the LUSH mark in Canada was not relevant to the infringement-related questions for which the jury was the sole trier of fact.  *See, e.g.*, *Grupo*, 391 F.3d at 1093 ("[U]nder the 'territoriality principle,' use of a mark in

another country generally does not serve to give the user trademark rights in the United States."). Although evidence of the LUSH mark in Canada was relevant to questions the jury considered in its advisory capacity, the district court did not abuse its discretion in excluding the evidence from the jury's hearing, as its probative value was substantially outweighed by dangers of confusing the issues, misleading the jury, and causing undue delay. Fed. R. Evid. 403. Regardless, any error was harmless, because CWL was permitted to present all of its evidence to the district court after the jury was dismissed and the court took that evidence into account in concluding that laches barred CWL's claims. *See, e.g.*, *In re First All. Mortg. Co.*, 471 F.3d 977, 999 (9th Cir. 2006).

D.  *The District Court's Judgment*

The jury found that CWL "prove[d] by a preponderance of the evidence that it owns LUSH as a trademark," and the district court's judgment stated that "CWL owns LUSH as a trademark in cosmetics and various other goods and services *other than clothing*." CWL argues that including the words "other than clothing" in the judgment is inconsistent with the jury's verdict and in error. Read as a whole, however, the judgment accurately reflects the court's disposition of this case. As a result of laches, CWL can neither enforce its trademark rights against Pinkette's use of the LUSH mark on clothing nor cancel Pinkette's registration for use of the mark on clothing. There was no error in the district court's judgment.

## III.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.